J. S. De Bose filed this suit against R. H. Kelly and J. H. Riggs seeking judgment for four hundred weeks compensation at the maximum rate. Judgment went by default against defendant, R. H. Kelly. Defendant Riggs admitted the injury of plaintiff as alleged, but set forth in his answer that plaintiff was an employee of R. H. Kelly, who was operating a sawmill, and that defendant Riggs had no connection with Kelly's business that would make him liable under the compensation act.
From a judgment rejecting his demands against Riggs, plaintiff prosecutes this appeal.
The record discloses that Kelly was the owner of the equipment necessary to build a portable sawmill. Lacking money with which to begin operations, he borrowed from defendant Riggs, and to secure the loan, he gave a chattel mortgage on this equipment, and, on the same day, signed a contract to sell his entire output to defendant Riggs, the pertinent paragraphs reading as follows:
"That whereas, the said R. H. Kelly is in the business of operating a portable saw mill in the Parish of Sabine, Louisiana, in the manufacture of cross ties and lumber, and desires to secure a ready market for all of his out put, and
"Whereas, the said J. H. Riggs is in the business of purchasing and handling and dealing in cross ties and lumber, and desires to purchase all of the cross ties and lumber that the said Kelly may produce in Sabine Parish, La.
"Therefore, it is hereby contracted and agreed that the said R. H. Kelly will sell to the said J. H. Riggs, and the said J. H. Riggs agrees to purchase from said Kelly, all of the cross ties that the said Kelly manufactures and delivers at the tie yard on the K.C.S. Ry. right of way at Many, La., and to purchase at the mill all of the lumber manufactured by the said Kelly, and agrees to pay the said Kelly the market price, for said cross ties and lumber, prevailing on the date such ties and lumber is taken up by the inspector of said Riggs. Said payments to be made weekly or as often as there is sufficient amount of cross ties or lumber to justify inspection."
On August 10th Kelly purchased a tract of timber from a Mrs. Meshell, and on the same day executed a deed to Riggs covering the identical timber. Mr. Riggs' agent said this timber deed was taken for security; that Kelly was permitted to cut and use the timber and was credited with the *Page 383 
full price of all delivered goods against all advances.
On September 10, 1946, Kelly began his first day of sawmill operation. Plaintiff, who is a brother-in-law of defendant Kelly, was engaged in work requiring him to be adjacent to the belt and flywheel. In some manner not disclosed by the record, this flywheel flew apart and plaintiff suffered serious injury which resulted in the loss of an arm above the elbow.
The doctor testified that plaintiff had a normal recovery after the amputation. Plaintiff testified that he went back to work for his brother-in-law in October and admitted that he received the same wages of $40 a week for "something like six months" following.
On August 11, 1947, he made demand through his attorney upon defendant Riggs. Upon Riggs' refusal to pay compensation, the present suit was filed on September 8, 1947, two days ahead of the prescriptive period.
The issue in the case is whether or not Mr. Riggs' ownership of a chattel mortgage on the mill, his advancing money for the purchase of timber, and his holding of the contract to purchase all of the timber cut by the mill, gave Mr. Riggs such control as to create the relationship of employer and employee between Riggs and the plaintiff.
The controlling point in the present case is the same as it was in the case of Grant v. Consolidated Underwriters, La. App., 33 So.2d 575, and the facts are similar in many respects. In that case, Grant was injured while in the course of his employment with Joe McAllister, who owned a tractor type tie mill which he had purchased from Gross and Janes Tie Company, paying about one-fifth down and giving a demand note to the Gross and Janes Tie Company, secured by chattel mortgage on the mill, for the balance. The defendant, Consolidated Underwriters, was the insurer of the Gross and Janes Tie Company.
The tie company purchased all of the ties cut by the mill. To assist McAllister, the company's agent had purchased the timber on a tract of land belonging to the Harvey brothers. McAllister set up his mill on the Harvey property. Ties cut were hauled by the Harveys on their truck to the delivery point of the tie company. Lumber from the mill was sold to a Mr. Barrett. The tie company remitted directly to the Harveys at the rate of 20¢ for each tie delivered to the tie company from the Harvey land. Some time after the accident forming the basis of that suit, McAllister sold his mill to Barrett, the principal consideration being the assumption of the unpaid balance due the tie company.
In that opinion, this Court held that plaintiff was an employee of McAllister and that the tie company was not responsible for the compensation due him for injuries received while so employed. The basis of the holding being (see page 578 of 33 So.2d): (1) McAllister was the bona fide owner of the mill, at which plaintiff was employed. (2) McAllister employed and paid plaintiff and had complete charge of the hiring, firing, paying and supervising of all his employees. (3) In the course of operations, he was under no obligation to report to the tie company on any matter.
In the case before us, Kelly was the owner of the mill, had full control and was under no obligation to account to Riggs for his operations. In fact, the case for the plaintiff here is hardly as strong as it was in the Grant case.
Plaintiff contends that since Mr. Riggs advanced money for the operation of the mill and had a contract to purchase its entire output from Mr. Kelly, Mr. Riggs became the principal of Mr. Kelly within the meaning of Section 6 of the Compensation Act, Act No. 20 of 1914, § 6, as Amended by Act No. 85 of 1926, § 1. One may purchase a part or the whole of the output of a sawmill owned by another without creating any relationship of principal and contractor between the purchaser and the sawmill operator. The terms of the above quoted contract between Kelly and Riggs creates, in our opinion, no such relationship.
The judgment of the District Court granting plaintiff compensation as prayed *Page 384 
for against the defendant Kelly and rejecting his demands against the defendant Riggs is correct and same is affirmed, with costs.