TALIAFERRO, Judge.
This case tenders for decision the question of relationship between William T. Taylor, deceased, amd the Newellton Hardwood Company, arising from the delivery of saw logs by the deceased to the company; that is, whether that relationship was that of employee, independent contractor, or vendor and purchaser.
William T. Taylor was crushed to death by logs falling from his truck at the company’s mill site, October 16, 1948.
This suit was instituted iby Mrs. Bessie Hickford Taylor, surviving widow, in her own right and on behalf of her two children by a former marriage; and by Nola Bryant Taylor, former, but divorced wife *636 of the deceased, on behalf of their two minor children, all of said children being dependents of the deceased, to recover workmen’s compensation for three hundred weeks at the rate of $30 per week, and for burial expenses. The suit impleaded as defendant, only the Employers’ Mutual Liability Insurance Company of Wisconsin, carrier of workmen’s compensation insurance for the Newellton Hardwood Company.
It is alleged that the facts of the arrangement between the deceased and the lumber company whereunder saw logs were to be delivered were such as to constitute him the employee of the company, or to superin-duce, as to the deceased, the status of independent contractor. In the latter event, recovery is forbidden unless it be shown that a “substantial part of the work time” of decedent was “spent in manual labor by him in carrying out the terms of the contract”. Act No. 179 of 1-948.
The suit is resisted primarily on the ground that the relationship between the deceased and the lumber -company was that of seller and purchaser; and, secondarily, that he was an independent contractor who did not come within the operative effect of the 1948 act.
The Court specifically held that the status of the deceased was that of independent contractor and awarded compensation on the basis alleged upon.
The only positive testimony in the record bearing upon the agreement under which the deceased was operating, is that of Mr. Harry E. Schadt, a member of the co-partnership, but his version of the agreement is re-enforced by pertinent circumstances and fragmentary statements of other witnesses. Mr. Schadt testified that the deceased came to see him. in August, 1948, and asked if his company needed “some additional logging”, and that he was informed that in about thirty days logs delivered by him would be accepted. Deceased was then informed that he would have to acquire the timber 'himself, and that the logs would be paid for after delivery to the mill, and scaled.
The ' deceased began delivering logs to the mill in September following. The testimony is without contradiction that he acquired the .timber, had it felled and converted into saw logs, which were loaded on to his truck and delivered by him to the mill site without any assistance, supervision- or control by the lumber company, or any of -its employees or members. Of course, there was an understanding between the parties as regards the length and diameter of the logs, and the price per thousand feet log measure that would be paid for each-species of timber.
Deceased had but one truck and it was understood that all logs delivered by means of this truck would be accepted, if of the kind and quality agreed upon, and would be paid for on the basis above stated.
The deceased owned all of the equipment used in his logging business, hired, fixed the wages of and paid his -own employees. He was not required to deliver any definite quantity or quality of logs. That was strictly up to him, and no definite time was fixed for the life of the agreement. Either side could abandon it at will without any liability whatever for resulting damages, if any.
Following a custom, generally prevailing among sawmill operators, after logs were accepted and scaled, the stumpage price due the owner of the trees from which the logs were cut, was paid by the lumber company directly to such owner, and the balance of the price of the delivered and accepted logs was paid over to the deceased. The payment of the stumpage price in the manner related was requested by the deceased and the owner of the standing timber. This practice is, as said before, not unusual. It provides a simple but certain method of protection both to the purchaser of the logs and to the seller of the timber. It assures the timber owner that he will be paid the stumpage price on the same basis as his vendee will be paid by the one to whom the logs are delivered. It protects the purchaser of the logs against claim for unpaid stumpage in the event the vendor fails to pay such stumpage pri-ce.
It is made clear that the title to the logs reposed in the deceased until their delivery to and acceptance by the lumber company; and it is equally certain that the deceased *637 could have sold and delivered the logs to any other person without danger of suit against him by the lumber company, in the way of damages, for his action. This being true, how can it be said that the deceased was an independent contractor? There was, in reality, no binding contract between the parties. There was no fixed obligation by the deceased to deliver any specific kind or quality of logs, and no term was fixed within which he could or should deliver such as were delivered. The lumber company was not obligated to pay for any logs save those actually delivered and accepted by it at its mill site.
As we view the situation reflected from the record, it is no more and no less, in its legal aspects, than that which would arise from an agreement between a retail merchant and a poultry man, whereby the merchant agreed to accept and pay for all the eggs of specified kinds and quality the poultry man would deliver to him. No one would contend that the poultry man was an employee of the merchant, nor that the agreement superinduced the status of independent contractor in the poultry man.
The term “independent contractor” is defined by the Workmen’s Compensation Law, Section 3, paragraph 8, amended Act No. 179 of 1948, § 1, to be: “Any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, under the control of his principal as to results of his work only,” etc.
It is clearly disclosed that the facts of the present case exclude it from the purview of said definition.' Here, while the recompense to the deceased for logs delivered and accepted, was fixed, yet there was no specified result to be attained, nor was there any definite agreement as to the kind, quality or quantity of iogs to "be delivered. So far as concerned the lumber company’s obligation, it may be said that it was simply this: To pay for logs when and if delivered; if none were delivered, no ill consequences followed.
The facts of this case are, in the main, not unlike these found in the recent case of Taylor v. Bass-Boyd Lumber Company et al., La.App., 47 So.2d 475, decided by this Court. However, in that case, after having found that the driver of the truck involved in a collision in which plaintiff's wife was killed, was not an employee of the lumber company, we ruled that it was unnecessary to decide whether the status of the driver was that of independent contractor, or . whether the relationship between him and the lumber company was that of seller and purchaser, since, in either event, the result would have been the same. This case arose prior to the passage of the 1948 Act, above referred to.
In Eaves v. Hillyer-Edwards-Fuller, Inc., La.App., 139 So. 510, on rehearing, Judge Culpepper cogently discusses the legal principles involved therein, somewhat analogous to those in the .present case, and holds that the facts of the case warranted the conclusion that the relationship of seller and purchaser existed as against the contention that the status of the employer of the injured employee, as regarded the dependent, was that of independent contractor.
The recent case of De Bose v. Kelly et al., La.App., 37 So.2d 382, decided by this Court in October, 1948, is also analogous to that before us. The facts of that case are stronger for the plaintiff’s contention than are those of the present case.
We are of the opinion that the undisputed facts in this case prove the relationship between the deceased and the mill company to be that of vendor and purchaser.
We are favored with lengthy brief on appellees’ behalf, wherein all phases of the’ case are elaborately discussed, and many cases are cited to support their contentions. We do not find these cases apposite to the established facts of this case. We repeat what has often been said in cases of this character, that each case must be decided upon its own peculiar facts.
For the reason herein assigned, the judgment from which appealed is reversed, and, accordingly, plaintiffs’ demands are rejected and their suit dismissed at their cost.