DORE, Judge
(concurring).
This case tenders for decision the question of relationship between the plaintiff and the defendant, that is, whether the relationship was that of employee and employer or vendor and purchaser.
Briefly, I find the essential facts to be:
In the latter part of 1948 plaintiff and a Mr. Goss were engaged in the operation of producing or manufacturing railroad ties at a place called Hecker, in Calcasieu Parish. In this operation, plaintiff would cut timber into logs and haul the logs to Goss’s saw mill. Goss would cut the logs into ties, which ties would be hauled by plaintiff, in his own truck, to a location specified by Godair, defendant’s supervisor and agent. It is shown that Godair had agreed to pay Goss a certain price per tie for such ties delivered and accepted by him at the railroad yards, out of which said price plaintiff was to be paid the sum of 65^ and the remainder of the price was to be paid to Goss. At the end of 1948, the operation ceased for lack of timber.
In the beginning of 1949, Godair was informed by some pulp wood producer that a Mr. Gabbert had some timber on West Fork, Calcasieu Parish, which he, Gabbert, would be interested in converting into ties. Gabbert had the intention of contacting Gross & Janes Company, a firm in the cross-tie business and a rival in business of defendant. In order to be ahead of Gross & Janes Company, Godair contacted Gabbert about the sale of his timber. Gabbert informed Godair that he would sell some of his hardwood and some of the pine to be cut in ties. Godair contracted with Gabbert for the timber on the basis of 25^ per tie stumpage on pine and 20{5 per tie stumpage on the hardwood. Godair obtained from Gabbert his ownership map so he could locate the timber. He and Gabbert thereafter visited the property and marked such pine trees which were to be converted into ties.
Thereafter, Godair contacted plaintiff to conduct a part of the operation. He orally agreed with plaintiff on the basis of so much per tie to be delivered and accepted at the railroad yard at ■ Lake Charles. In the agreement, plaintiff was to cut the timber, haul the logs to the mill, ■cut the timber into ties, haul the ties to the railroad yard and properly stack the ties. He was then to be paid upon the acceptance of the ties.' Plaintiff, not having a saw mill, leased the saw mill of Mr. Goss and removed the mill from Hecker to Moss Fork. I may say at this time that prior to the moving of the mill, plaintiff and Godair visited the scene of operation. The mill site was selected; Godair showed plaintiff the property lines, the pine and hardwood trees to be cut and how far plaintiff’s operation was to extend in that there were two other operators on the Gabbert tract. It was during this operation that plaintiff received his injury which forms the basis of this suit.
The defendant’s sole contention in this case is that the relationship between plaintiff and defendant is that of vendor and purchaser. It is my understanding of our civil law that in order to sustain such a position, a vendor must be the owner of the thing sought to be sold, because the sale of a thing not belonging to the vendor is a nullity. In order to conclude that the ties delivered to the railroad yards were owned by plaintiff, the record must show that the timber from which it was manufactured was owned by the plaintiff. There is not a scintilla of evidence showing that plaintiff, in any wise, can be said to have purchased the timber. The evidence is to the contrary. The evidence is conclusive that Gabbert, the owner of the timber, never contacted or had any business dealings with plaintiff. Gabbert’s contract with regard to the timber, and in fact his only agreement, was with Godair, acting solely as defendant’s agent. According to the defendant, Godair handled the transaction between Gabbert and himself. Defendant states: “Mr. Godair was in contact with Mr. Gabbert and told him (Gabbert) me could likely arrange to h<w.e ties made from this hardwood, which *866 was of a low grade character, and such pine as he might care to have made into cross ties •we could probably arrange it by having mills cut into ties, and to assure Mr. Gab-bert that he would receive payment for the timber removed from his lands, we would guarantee to him we would pay to him directly an agreed stumpage for every tie that was delivered to us and that came from timber owned by him.” (Emphasis mine). Under no stretch of the imagination, in view of the above statement, can it be said that plaintiff was the owner of the ties, a requisite for the relationship of vendor and purchaser; to the contrary it can be said, under the facts, that Gab-bert agreed to allow his timber to be manufactured into ties on what is known really as selective cutting by defendant, Gabbert to be paid so much a tie in the timber manufactured state, he to retain the ownership of the pine tops, and defendant to see that it was so manufactured.
In other words as I view the facts in this case, Ga'bbert agreed with Godair, defendant’s agent, to have certain timber belonging to him to be converted into cross ties; Godair undertook to carry out this agreement by contracting with plaintiff, and two other tie-makers, with that end in view. Godair allotted Gabbert’s timber to three operators, each their own territory; he allotted the southern end of a tract to plaintiff, showed him the lines, helped plaintiff in the location of the mill, pointed out to plaintiff such' timber from which the ties were to be made, and told him to work towards the north to meet the other operator and compensated plaintiff at the agreed rate per tie after the same had been made, delivered and accepted. To me, the same situatión applies as if Godair had told plaintiff, “Here is a definite tract of timber belonging tó Mr. Gabbert, which is to be converted into ties; for your hire, I will pay you so much per tie, less the stumpage to Mr. Gabbert, delivered, stacked and acceptable at the railroad yards at Lake Charles.” Under such an agreement, I am of the firm opinion that the relationship 'between plaintiff and Godair, defendant’s agent, was that of master and servant, or employer and employee.
It may be proper to state that the defendant is not contending that plaintiff was an independent contractor, yet the agreement between plaintiff and defendant has all of the earmarks of such. The reason why such a plea was not tendered by the defendant may well be that Section 3, paragraph 8, of Act No. 20 of 1914, our Compensation Statute, was amended by Act No. 179 of 1948, LSA-RS 23 :1021 (6), so as not to include in the term “Independent contractor” a person who renders manual labor. Undoubtedly the services to be performed by plaintiff in our case involved manual labor, such as cutting the timber into logs, loading and unloading the logs, loading and unloading and stacking the ties. A second reason is that under the well settled jurisprudence of this State, plaintiff would not be classified as an independent contractor, but would be said to be an employee. See Odom v. Lutcher & Moore Lbr. Co., 7 La.App. 458, the cases cited therein and other cases too numerous to be cited.
The defendants have cited many cases to support their contention, including the recent case of Taylor v. Employees Mutual Liability Ins., Co., et al., La.App., 49 So.2d 635. In all of these cases, the Court found that the testimony was without contradiction that the claimant, or his beneficiary, acquired and was the owner of the timber which was converted into logs, I do not find these cases applicable to the facts of this case.
In short, I am in full accord with Judge LOTTINGER’S finding of fact and in the decree handed down. I therefore respectfully concur therein.