58 So.2d 206 (1952)
220 La. 995
TAYLOR et al.
v.
EMPLOYERS MUT. LIABILITY INS. CO. et al.
No. 40221.
Supreme Court of Louisiana.
February 18, 1952.
Rehearing Denied March 24, 1952.
Howell H. Heard, Monroe, for plaintiffs-relators.
Hudson, Potts, Bernstein & Davenport, Monroe, and Philip Watson, St. Joseph, for defendants.
HAWTHORNE, Justice.
This is a suit for workmen's compensation against Newellton Hardwood Company, a partnership, and its compensation insurer, Employers Mutual Liability Insurance Company of Wisconsin, brought by the dependents of William T. Taylor, who died as a result of an accident which occurred while he was unloading logs at the mill of the defendant Newellton Hardwood Company at Newellton, Louisiana.
Relators, plaintiffs in the district court, contend that the deceased was either an employee of Newellton Hardwood Company or an independent contractor as defined in the Workmen's Compensation Act, Section 3, Paragraph 8, as amended by Act 179 of 1948, LSA-R.S. 23:1021(6), and that in either case he was covered by the provisions of the act and his dependents are entitled to compensation.
*207 The Court of Appeal, Second Circuit, with the late Judge Taliaferro as its organ, in a well reasoned and well written opinion concluded that under the undisputed facts of this case the relation between the deceased and the defendant Newellton Hardwood Company was that of vendor and purchaser, and accordingly rejected plaintiffs' demands and dismissed their suit. See Taylor v. Employers Mutual Liability Ins. Co., La.App., 49 So.2d 635, 636.
The deceased, who was engaged in the business of buying timber, purchased from the owner of a tract of land the timber standing thereon. As found by the Court of Appeal, he then proceeded to fell the timber with his own equipment used by him in his business, with the assistance of one or more employees hired by him, whose wages he fixed and paid. After the timber had been converted into logs, it was delivered to the defendant's millsite in a truck operated by the deceased, where the logs which were accepted were scaled by an employee of the lumber company. Those rejected for any cause remained the property of the deceased. The stumpage price of the logs accepted, which was due the owner of the tract of land from which the timber was cut, was paid by the lumber company directly to the owner, and the balance of the purchase price for the logs was paid to the deceased. Payment in this manner was made at the request of the deceased. The owner of the land made the same request some time after the sale of the timber to the deceased.
It is shown in the jurisprudence of this state, as pointed out by the Court of Appeal, that this method of payment was according to a custom generally prevailing among sawmill operators, and that "* * * This practice is, as said before, not unusual. It provides a simple but certain method of protection both to the purchaser of the logs and to the seller of the timber. It assures the timber owner that he will be paid the stumpage price on the same basis as his vendee will be paid by the one to whom the logs are delivered. It protects the purchaser of the logs against claim for unpaid stumpage in the event the vendor fails to pay such stumpage price".
As stated by the Court of Appeal, there was an understanding as to the length and the diameter of the logs to be accepted and the price per thousand feet log measure to be paid for each species of timber. However, the timber was felled, loaded onto the deceased's truck, and delivered to the millsite entirely by the deceased and without any supervision or control on the part of the lumber company. The lumber company never bound itself to accept delivery of any particular kind, quality, or quantity of logs, and there was no time fixed for the delivery of such logs.
The Court of Appeal concluded that the evidence in this case made it clear that title to the logs remained in the deceased until their delivery to, and acceptance by, the lumber company; that the only obligation it had was to pay for the logs accepted by it when delivered to the mill, and that the deceased could have sold the logs purchased by him and cut from the tract of land to any other person without incurring any obligation to the lumber company. Having so concluded, the court found that there was no binding contract between the parties which would establish an employee or an independent contractor relationship, but that the relationship between them was that of vendor and purchaser only.
The district court decided that the deceased was not an employee of the lumber company but was an independent contractor expressly covered by the provisions of Section 3, Paragraph 8, of the Workmen's Compensation Act, as amended by Act 179 of 1948. The court stated, however, that he could not have been classified as an independent contractor under the jurisprudence as it existed prior to the 1948 amendment.
Section 3, Paragraph 8, as amended in 1948, LSA-R.S.23:1021(6), reads as follows: "`Independent Contractor' means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of *208 his principal as to results of his work only, and not as to the means by which such result is accomplished, and [they] are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter." (All italics ours.)
The only change made by this amendment was to provide that an independent contractor is expressly covered by the provisions of the Workmen's Compensation Act if a substantial part of the work time of such independent contractor is spent in manual labor by him in carrying out the terms of his contract. The definition of an independent contractor was not changed in any manner, or, in other words, the definition prior to the amendment is the same as in the act as amended. The trial judge was therefore correct in stating that under the jurisprudence of this state Mr. Taylor, the deceased, could not have been classified as an independent contractor prior to the 1948 amendment, but he was in error in stating that Mr. Taylor would be an independent contractor under the 1948 amendment.
The 1948 amendment was brought about by a decision of this court in the case of Allgood v. Loeb, 210 La. 594, 27 So.2d 380, 383, a tort action. The services rendered by the plaintiff to the defendant in that case consisted entirely of manual labor, as he was a carpenter employed to apply siding and roofing to various buildings. The defense was that the plaintiff was an employee, and that his exclusive remedy was under the Workmen's Compensation Act. In rejecting this defense and holding that the suit was properly brought as a tort action, this court said: "The fact that the contract contemplates the performance of manual labor, and the fact that the plaintiff actually engaged in manual labor in carrying out the contract, would not transform the plaintiff into an employee if his status in all other respects was that of an independent contractor. * * *" Thus it will be seen that since this amendment an independent contractor's exclusive remedy would be under the Workmen's Compensation Act in a case having the same facts.
Relators argue that under the facts in the case now before us the deceased was buying logs and cutting and hauling them for the lumber company, that he was therefore an independent contractor or other type of employee, and that the vendor-vendee relationship was only incidental to this purpose. In this connection they lay much stress on the fact that the lumber company paid the stumpage price directly to the owner of the land.
Wex S. Malone, professor of law, Louisiana State University, in his work, Louisiana Workmen's Compensation Law and Practice (1951), has this to say with reference to transactions of this kind: "* * * The middleman is usually not financially solvent and the landowner requires the defendant to hold back the stumpage charge from the purchase price on resale and remit this directly to the landowner. Thus the sale to the middleman is made exclusively upon the credit of the defendant. This fact, however, has never caused the transaction to lose its character as a good faith sale and resale." Chapter 6, sec. 123, p. 148.
As a basis for this statement the author cites a long list of decisions by the Courts of Appeal of this state, all of which support it. For example, in the cases of Anthony v. Natalbany Lumber Co., Ltd., La. App., 187 So. 288, First Circuit, and Williams v. George, La.App., 15 So.2d 823, Second Circuit, the facts are very similar to the facts in the instant case, and in each of these cases it was held that the relationship between the parties was that of purchaser and seller. To the same effect is the more recent case of McDonald v. Hammond Box Co., Inc., La.App., 17 So.2d 39, First Circuit.
So, in the instant case, we conclude that the relation between the deceased and the defendant lumber company was simply that of vendor and vendee, as held by the Court of Appeal, and that the fact that the lumber company paid the stumpage price directly to the owner of the land did not make the deceased an independent contractor within the definition of that term as set forth in the Workmen's Compensation Act. Nor do *209 we agree with relators that the lumber company was paying Mr. Taylor for work done rather than for the product delivered. Its primary purpose in its dealings with the deceased was to acquire logs which it needed in its lumber business.
For the reasons assigned, the judgment of the Court of Appeal is affirmed at relators' costs.
MOISE, J., dissents and assigns written reasons.
MOISE, Justice (dissenting).
The Legislature enacted, as an amendment to the Workmen's Compensation Law, Act No. 179 of 1948. The statute shows on its face that it is remedial in nature and it was the intent of the Legislature to make certain recovery under the statute where there had been a denial by the courts. Being of recent origin, a construction of this statute is practically nil.
In the instant case, the district judge who saw and heard the witnesses, rendered judgment in favor of the widow and children, as prayed for. The Court of Appeal, by a divided court, reversed the judgment of the district court, Judge Kennon dissenting. I am in full accord with the judgment of the district court and the dissenting appellate judge.
The object of all judicial investigations is the ascertainment of the truth. Evidence is a means by which that is effected. Taylor met his death while performing services, either in carrying out his job as an independent hauling contractor or as an employee of the lumber company. The defense urged against recovery and approved by the majority opinion of this Court is that there existed a relationship between the lumber company and Taylor of vendor and vendee. There is proof in this record to the contrary, almost as strong as the truth of Holy Writ, and it comes from the documents of the lumber company, obtained on the trial of this suit, by subpoena duces tecum. From the checks and documents the witness shows the services performed and the relationship between the parties. We have merely to examine on page 10 of the Transcript, Exhibits P-24, P-25, P-26, and documents Nos. 16 and 17. These documents and the explanation of the witness are persuasive. At the time Mr. Schadt was on cross-examination (being a partner in the lumber company and the Operating Manager) he testified as follows:
"Q. I hand you a statement and ask you what that statement represents? A. It represents an amount we paid Mr. Taylor for hauling logs.
"Q. I hand you another statement marked P-25, and ask what that represents? A. This represents the amount of money we paid Mr. Taylor on hauling timber.
"Q. I hand you here a statement marked P-26 and ask what that represents? A. It represents the amount we paid Mr. Taylor for hauling."
This is conclusive to my mind of the relationship between the parties. It is a rule of evidence that one cannot impeach the credibility of his own witness.
Defendant contends that the relationship between it and Taylor, the deceased, was that of vendor and vendee of logs; that the agreement was orally made. Certainly, Mr. Ferrington, the standing timber owner, was a vendor to either the lumber company or Mr. Taylor. As the only living witness to the transaction, his evidence should be conclusive. When asked on cross-examination whether Mr. Taylor could have sold this timber to a mill owner other than defendant, Newellton Hardwood Company, Mr. Ferrington answered:
"Q. Do you know Mr. Ferrington whether Mr. Taylor could have sold this timber to Ed McDonald's Mills (a competitor), if he, Taylor, so desired?
"Objection.
"A. Do you want me to answer that? Do I think Mr. Taylor would steal that timber."
I respectfully dissent.