118 So.2d 117

Bobby VINZANT

v.

L. L. BREWTON PULPWOOD CO., Inc.

No. 44803.

Feb. 15, 1960.

Jess Funderburk, Jr., Leesville, for applicant.

Hiram J. Wright, Charles L. Hamaker, Winnfield, for defendant-respondent.

VIOSCA, Justice.

Presented for our determination in this compensation suit is the question of whether the plaintiff, at the time of the accident, was an employee of the defendant, and, if so, the extent of plaintiff's injuries.

Alleging that he is totally and permanently disabled, plaintiff brought suit to recover $35.00 per week for a period not exceeding four hundred weeks under the Workmen's Compensation Statute, LSA-

R.S. 23:1021 et seq. In his petition, plaintiff alleges that he was employed as a laborer and truck driver by L. L. Brewton Pulpwood Company, hereinafter called Brewton, and that on November 7, 1957 he injured his back while cutting timber for Brewton. The answer to this petition denied that plaintiff was an employee of Brewton, and alleged that plaintiff was an employee of Dobson & Martin, a partnership that had purchased the timber on land which was owned by the U. S. Government. Thereafter a supplemental and amended petition was filed by plaintiff wherein he alternatively pleaded that both Brewton and Dobson & Martin were his co-employers, and in the further alternative that if they were not, then the partnership of Dobson & Martin was his employer. Dobson & Martin answered and alleged that there existed a buyer-seller relationship between itself and the plaintiff.

After it was conclusively established by evidence that there was no employer-employee relationship between plaintiff and Dobson & Martin, the partnership moved that the suit against it be dismissed. This motion was granted and formal judgment of dismissal as to Dobson & Martin was rendered and signed. No appeal was taken from this judgment.

After trial in the district court, there was judgment in favor of the plaintiff and against defendant Brewton awarding com-

pensation to the plaintiff at the rate of $32.50 per week for the period from November 7, 1957 to August 13, 1958, the date on which the district court determined the disability to plaintiff's back had ceased to exist. Plaintiff appealed to the Court of Appeal asking for an increase in the award to four hundred weeks. Defendant answered the appeal and asked that the suit be dismissed, or, in the alternative, that the judgment be affirmed. After hearing, there was judgment reversing the holding of the district court and ordering plaintiff's suit dismissed. Upon application of plaintiff, we granted writs of certiorari and review and the matter is now submitted for our determination.

In his assignment of errors, plaintiff charges that the Court of Appeal erred in two particulars: (a) In holding plaintiff to technical rules of pleading and evidence in a compensation case, and (b) in reversing the trial court on a finding of fact.

According to the facts contained in the record the partnership of Dobson & Martin purchased certain timber on lands owned by the U. S. Government. While engaged in cutting this timber which was to be delivered to Brewton, the plaintiff injured his back.

It is undisputed that shortly prior to the accident, and for some four or five years previous thereto, plaintiff was employed off and on by the defendant cutting timber owned by defendant and hauling wood to defendant's yard. During this period of time, and while plaintiff was admittedly an employee of Brewton, the latter discontinued carrying Workmen's Compensation insurance, and decided to carry this insurance himself. At the instance of defendant, plaintiff as well as other employees, were required to take a physical examination sometime in August, 1957. Plaintiff was also required by Brewton to carry liability insurance on his truck. The insurance policy was issued on September 12, 1958 by The Travelers Insurance Company and the Service Card was issued in the name of Bobby Vinzant, Chestnut, Louisiana, "Pulpwood Hauler L. L. Brewton Pulpwood Company". All of the foregoing facts are undisputed.

Shortly before the accident plaintiff had been engaged in cutting timber owned by defendant in the Black Lake area but because of weather conditions had commenced, some two or three days prior to the accident, cutting the timber of Dobson & Martin on the government land. It was established that plaintiff had hauled wood to other yards on other occasions and did not exclusively haul wood to the yard of defendant, but on this occasion, plaintiff brought the wood to the yard of defendant and was paid by the cord by defendant who in turn withheld for Dobson & Martin $2 per cord for stumpage.

Plaintiff claims that he had been sent to cut wood on the government land on

which the timber had been sold to Dobson & Martin by Bedgood, woods supervisor for defendant, and was told by Bedgood the size and kind of wood to cut. This is denied by defendant.

The testimony of plaintiff consists of his own, that of his brother, Rufus Vinzant, and his nephew, Roy Brown, both of whom worked with the plaintiff and for the defendant on previous occasions. While they were employees of Brewton, these three were paid by the cord for hauling, and after deducting expenses, divided equally the amount they earned. These three testified that they were directed by Bedgood to cut on the Dobson-Martin tract, although there are minor discrepancies as to the time, place and circumstances of this direction by Bedgood. All testified that Bedgood did not at any time come on the land to supervise the cutting, because they had not worked there long enough. All three had previously worked for defendant in the Black Lake area cutting timber at the direction and under the supervision of Bedgood.

Bedgood denied that he at any time instructed plaintiff to cut timber on the Dobson-Martin tract, but admitted that when the weather made it necessary to discontinue cutting Brewton's timber and he was asked by plaintiff where they could cut, he told them to see Martin. Brewton testified that he never bought the timber on the Dobson-Martin tract but was told by Mar-

tin that Dobson & Martin had purchased it and contractors were free to cut timber thereon for a specified fee set by Martin. Plaintiff was not present on this occasion. Clovis Bryant, yard manager for defendant, testified that plaintiff had, at various times, cut timber owned by Brewton, the latest instance being in the Black Lake area just a few days prior to the accident in question. Bryant had ordered the physical examination for plaintiff and others because, as he explained: "we were trying to get them all lined up and get them examined as regular haulers in the yard in case they did get some company supervised stuff then they would be ready to go to work instead of having to get a (an) examination before they could start hauling timber." Bryant testified that plaintiff was required to carry liability insurance by the defendant, and that plaintiff was an irregular employee of defendant. It is interesting to note that Bryant also testified that when defendant carried compansation insurance with an insurance company no examination was required, but when defendant started carrying its own insurance then examinations were required.

Kermit Martin testified that in the office of defendant, and in the presence of other cutters, (plaintiff not being present) he announced that he had purchased the timber on the government land and the cutters and contractors agreed to pay him a stumpage fee of $2 a cord for timber

cut thereon. He testified that he told defendant to withhold his share from wood cut thereon and hauled to defendant's yard.

Plaintiff, his brother and his nephew, all positively testified that at the instance of Bedgood they were sent to the Dobson & Martin tract to cut, and that Bedgood told plaintiff the size and kind of wood to be cut. The wood so cut was hauled to the defendant's yard and paid for by defendant.

From the admitted facts and the evidence presented, it is more logical to conclude that the relationship between plaintiff and defendant of employer-employee that admittedly existed off and on for a period of four or five years on previous occasions, continued to exist at the time plaintiff was injured on November 7, 1957.

The district judge in finding that there existed an employer-employee relationship relied to a large extent upon the fact that for some time and just prior to plaintiff's going upon the Dobson & Martin tract, plaintiff had been employed by defendant. The trial judge in his reasons stated: " * * * if there was going to be a clear change in the status of the relationship between plaintiff and defendant it would seem that this change should have been clearly discussed and understood between the parties."

We agree with the district judge. Where one is employed by another over a period of time to do certain work, he has a right to presume that the same relationship continues when he does additional work of the same character, unless it is made clear to him that there will be a new relationship. There is no such showing in this case; indeed, there is no evidence whatever of any discussion of this subject between the parties.

In its opinion reversing the district judge, the Court of Appeal in commenting on the alternative pleadings of plaintiff, said [113 So.2d 297]:

"It is quite obvious from plaintiff's pleadings that he was not only uncertain but entirely ignorant of his exact employment relationship, and, unfortunately, this uncertainty and ignorance was not clarified by the evidence on trial of the case."

It is this statement that plaintiff complains of in his assignment of errors, when he alleges that the Court of Appeal erred in applying to this case technical rules of pleading and evidence in contravention of the provisions of the Workmen's Compensation Law. Plaintiff had the right to plead alternatively without prejudice to his position. That is peculiarly true here where the alternative pleas are based on conclusions of law. Alternative allegations of different or even conflicting legal conclusions from admitted or established facts in no way militates

against the pleader, particularly in a compensation suit, where there are no technical rules of pleading or evidence.

In holding that no employer-employee relationship existed the Court of Appeal stated:

"In support of his contention of employment of Brewton Company, the plaintiff testified that he had been directed to cut and haul the gum timber from the Martin Tract by defendant's woods supervisor, Raymond Bedgood. This version of plaintiff's employment was corroborated by the testimony of his brother, Rufus, and his nephew, Robert Roy Brown. However, the testimony of these three witnesses contained so many discrepancies as to the time, place and circumstances of their purported employment that we seriously question the credibility thereof. Bedgood positively and convincingly denied the employment of plaintiff, as did the witness, Bryant, who was defendant's yard manager.

"Our examination of this record convinces us that plaintiff has completely failed to establish, with any certainty or by any degree of preponderance of evidence, his relationship as an employee of the defendant, Brewton Company. To the contrary, we think the record supports the conclusion that plaintiff, with his brother

and nephew who were the only members of his crew at the time of the accident and the injury for which he seeks compensation, was working on his own without any agreement of employment with anyone else, voluntarily and without any nature of supervision or direction whatsoever. In view of this conclusion, it follows that plaintiff has no basis for his claims against the defendant."

■■ It is true as pointed out by the Court of Appeal that there was some discrepancy in the testimony of the plaintiff's witnesses as to the time, place and circumstances of their purported direction by Bedgood. Although all these witnesses positively testified that they were directed by Bedgood to cut timber on the Dobson-Martin tract, they are not in complete agreement as to the time and place of their meeting with Bedgood. Bedgood himself admits he told them to see Martin, but he too is not positive as to where the conversation took place. It is only natural to expect minor variations in the testimony of truthful witnesses with respect to details of incidents which are of no particular significance at the time of their occurrence, and for that reason leave no lasting impression. On the other hand, when witnesses agree on all minor details and repeat them parrot-like there is reason to suspect their veracity. In any event the

district judge saw and heard these witnesses and was in a better position to judge their sincerity and veracity than the appellate court. When there is direct conflict between the testimony of the plaintiff's witnesses and the testimony of defendant's witnesses, great weight should be given to the finding of the district judge who saw and heard the witnesses. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707, and the cases cited therein.

On these facts we believe that the conclusion of the Court of Appeal that the relationship of employer-employee did not continue to exist is erroneous, and that the finding of the district judge should be adopted.

The district judge awarded plaintiff compensation at the rate of $32.50 per week from November 7, 1957 to August 13, 1958. He fixed plaintiff's earnings at $50 per week. The evidence with respect to plaintiff's earnings is very meagre. Plaintiff himself estimated that he earned about $60 per week on the average. Brown, who shared the net earnings with plaintiff and plaintiff's brother to the extent of one-third, estimated their earnings to be between $40 and $50 per week. The defendant offered no evidence whatever as to the amount he paid plaintiff. Under the circumstances, we cannot say that the district judge was in error when he adopted the middle figure of $50 per week, 65% of which is $32.50 per week.

Plaintiff claims compensation for four hundred weeks. The district judge held that "plaintiff has no medical corroboration beyond August 13th, 1958."

Plaintiff suffered an injury to his back. Although plaintiff testified that he was still suffering pain at the time of the trial, there is no evidence of any serious injury to his back. Dr. T. W. Meriwether, who examined plaintiff on March 4, 1958, testified that plaintiff suffered a moderate lumbosacral strain. Neither he nor Dr. George P. Schneider, Jr., found any evidence of any herniated disc or other serious disability. Dr. Meriwether testified that he discharged plaintiff from further orthopedic care on March 4, 1958 and that plaintiff was able to return to full activities at that time. Dr. Schneider, who was called as a witness for plaintiff and who examined him on several occasions, the last being on May 13, 1958, found the longest that the disability could last would be through August 13, 1958. We believe that the conclusions of the trial judge on the extent and duration of disability is correct.

For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside and the judgment of the district court reinstated. Costs of all courts to be paid by defendant.