PONDER, Judge.
Plaintiff has appealed the dismissal of his demands for workmen’s compensation benefits. We affirm.
R. A. Bennett, Jr., a defendant (Southern Casualty Insurance Company, the other defendant, is Bennett’s workmen’s compensation insurer) was a pulpwood dealer, selling, among others, to Boise Southern Company, which required that its dealers carry workmen’s compensation insurance. Plaintiff herein was a producer under Bennett. The working arrangement was somewhat as follows:
As Boise Southern needed pulpwood it would give purchase orders to the dealers from whom it purchased, Bennett and others. Bennett would then issue forms to the producers with whom he had somewhat loose arrangements permitting them to deliver wood to Boise Southern for his account. Boise Southern would pay Bennett for the wood delivered to it by them. Bennett would pay those producers delivering wood for his account. The producer would pay for the help he used, his equipment and all other expenses. The wood cut and delivered to Bennett by his producers was obtained by two methods. The producers were encouraged to seek out and purchase timber on their own accounts. However, Bennett often would purchase standing timber from the owners and then allow a producer to cut the wood thereon. In the first instance, Bennett would not supervise the work, but would in frequent instances deduct the stumpage from his settlement with the producer and issue his check covering the stumpage directly to the owner of the timber. In the latter instance, Bennett would give such supervision to the cutting of the timber as to insure that his agreement with the timber owner was complied with.
At the time of the injury, plaintiff was cutting wood on which he had made his arrangements with the owner, Fred W. Pope. It was established that Bennett and Pope were not even acquaintances and that Bennett had never been to the Pope tract.
In complete, well written reasons for judgment, the trial court has analyzed the relationship between Bennett and Woodard, and, believing we cannot improve thereon, we quote with approval this analysis:
“The timber which plaintiff was cutting and delivering to Bennett was acquired by plaintiff directly from Pope, the landowner, and plaintiff was the exclusive owner of the timber so acquired. There was no negotiation or contact between Bennett and Pope whatsoever.
“Bennett never at any time came upon the Pope lands while plaintiff was carrying on his operation thereunder and never at any time gave plaintiff any instructions, directions or attempted to exercise any control over his operations thereon.
“Woodard had full and complete control of hiring and firing his own employees and alone was responsible for and did pay them for their services. He had complete control of when and where his employees worked and usually picked them up at their home and transported them to and from work.
“Woodard was not under obligation to furnish any fixed quota or to cut, deliver or supply Bennett with any fixed amount of timber. Even though he received tickets for sale of wood to Bennett, he was not obligated to do so nor subject to any liability for failure to do so.
*502 “Bennett did not direct the producer or his employees to report at any particular place or at any particular time nor control the time or circumstances under which they worked.
“Bennett did not undertake or become involved in the financing or purchase of any of the producer’s trucks or equipment and made no advances of money on loan or otherwise to plaintiff in anticipation of such deliveries by plaintiff.[1]
“Bennett did not hold out from the amount payable to plaintiff or other producers any insurance premiums, indome tax or social security, withholdings or anything else except the stumpage to the owner when requested as above mentioned.
“Bennett could discontinue receiving-wood from plaintiff at any time and plaintiff could discontinue delivering wood to Bennett at any time as in their own discretion they saw fit, and without being subject to any liability for such discontinuance.
“Woodard was free to purchase time-ber from anyone and at any price he could negotiate with the owner and if it was below the standard rate, the savings inured to the plaintiff’s benefit. In fact, he testified that some landowners had given him the timber to clear the lands, in which event he paid no stumpage from the price he received.”
Continuing his detailed reasons for judgment, the trial court then considered the jurisprudence on this problem, especially the cases of Taylor v. Employers Mutual Liability Insurance Company, 220 La. 995, 58 So.2d 206 (1952); Bryant v. United States Fidelity & Guaranty Company, 163 So.2d 95 (La.App. 3 Cir. 1964) (writ refused); Hadnot v. Southern Casualty Insurance Company, 166 So.2d 15 (La.App. 3 Cir. 1964); Collier v. Southern Casualty Insurance Company, 186 So.2d 161 (La.App. 3 Cir. 1966) (writ refused); Burns v. American Mutual Liability Insurance Company, 238 So.2d 278 (La.App. 3 Cir. 1970) (writ refused), standing for the proposition that the true test for the distinction between the vendor-vendee relationship and that of employer-employee is the right, not the actual exercise thereof, of control and supervision over the operation. When the right exists the relationship is that of employment; when it is absent, the relationship, in these timber cases, is that of a sale and purchase.
We agree with the trial court, also, in its conclusion that the differing circumstances in this case does not require the application of the recent case of Hart v. Richardson, 272 So.2d 316 (La.1973). There the Supreme Court pointed to the intermediary relationship of the producer between the timber owner and the dealer, the right of economic control of the dealer over the producer because of the extension of credit for required purchases and the specific wording of the insurance policy in its definition of an independent contractor in allowing recovery on its finding that the plaintiff was an employee of an independent contractor.
Nor do we believe that the case of Bellard v. Tri-State Insurance Company, 282 So.2d 453 (La.1973) dictates a different result. In that case the Supreme Court pointed to the control actually exercised in directing where the wood was to be cut, to the long continuing relationship, to the furnishing of equipment in arriving at the conclusion that plaintiff was entitled to workmen’s compensation. We do not find these indicia in this case.
We approve also the conclusio that the method used in computing the premium for the workmen’s compensation insurance, that is, the payment of an amount *503 for each cord of wood, does not have the effect of extending coverage beyond that imposed by law. Hadnot v. Southern Casualty Insurance Company, supra; and Collier v. Southern Casualty Insurance Company, supra.
For these reasons the judgment is affirmed. Plaintiff is to pay all costs.
Affirmed.

. There was some testimony of one instance of overpayment, which was repaid by deductions from several successive checks. Plaintiff himself, however, testified it was an overpayment and not a loan. It was possible for Woodard to draw money already accrued to him because of delivered wood prior to the regular settlement day.