305 So.2d 528 (1974)
Ottis Lee WOODARD, Plaintiff-Appellant-Relator,
v.
SOUTHERN CASUALTY INSURANCE COMPANY et al., Defendants-Appellees-Respondents.
No. 54615.
Supreme Court of Louisiana.
October 28, 1974.
*529 L. H. Coltharp, Jr., Hall, Coltharp & Lestage, DeRidder, for defendants-appellees-respondents.
E. M. Nichols, Lake Charles, for plaintiff-appellant-relator.
TATE, Justice.
The plaintiff Woodard sues for workmen's compensation benefits. He alleges he was injured while working as an independent contractor executing work which is part of the "trade, business, or occupation" of the defendant Bennett, La.R.S. 23:1061, see also La.R.S. 23:1021(6), so that Bennett is liable in compensation for the injuries thus received. Bennett and his insurer (Southern Casualty) were made defendants.
The court of appeal affirmed the trial court's dismissal of Woodard's suit. 289 So.2d 500 (La.App. 3d Cir. 1974). The previous courts held that a buyer-seller relationship was established, rather than that of principal-contractor, so therefore Bennett was not liable in workmen's compensation. We granted certiorari, 293 So.2d 181 (La.1974), primarily because of the substantial contention that such result was inconsistent with the decisions of this court in Bellard v. Tri-State Insurance Company, 282 So.2d 453 (La.1973) and Hart v. Richardson, 272 So.2d 316 (La.1973).
Legal Principles Applicable
The parties concede that the principles applicable to determination of this question are set forth in Bellard v. Tri-State Insurance Company, 282 So.2d 453, 455 (La. 1973) as follows:
"We have consistently held that where,. . . a principal engaged in procuring timber products is actually paying for services in their processing, the person rendering the services is a contractor performing work which is part of the principal's business; so that employees of the contractor are entitled to compensation benefits from the principal, if injured as here while performing work in the principal's business. Hart v. Richardson, 272 So.2d 316 (La. Sup.Ct.1973); Stevens v. Mitchell, 234 La. 977, 102 So.2d 237 (1957); Jones v. Hennessy, 232 La. 786, 95 So.2d 312 (1957); Kline v. Dawson, 230 La. 901, 89 So.2d 385 (1956).
"In this regard, compensation liability is not defeated because the transaction between the principal and the contractor includes incidents of a buyer-seller relationship. Hart v. Richardson, cited above. Further, in the absence of evidence clearly showing that the contractor was producing for the open market rather than primarily for the principal, a long-continuing relationship whereby the contractor primarily processes timber products for the principal, or one involving the furnishing by the principal to the contractor of the equipment to perform the work (albeit in the form of a credit sale), are indicia tending to prove that the contractor is employed in the principal's business while processing timber products. Vinzant v. L. L. Brewton Pulpwood Co., 239 La. 95, 118 So.2d 117 (1960); Jones v. Hennessy, cited above."
In a continuing timber-producing arrangement such as the present, the determinative issue is thus whether the "producer" (i. e., the contractor/seller) who cuts, hauls, and delivers the timber to the "dealer" (i. e., the principal/buyer), is so processing the timber for the open market or is instead doing so on behalf of the dealer as part of the latter's trade, business, or occupation.
The Present Facts
Bennett was one of several dealers to whom Boise Southern would give purchase orders for so many cords of pine pulpwood each month. Bennett would then issue *530 forms to producers, such as the plaintiff Woodard, authorizing them to deliver wood to Boise Southern for his account. Boise Southern would pay Bennett for the wood delivered to it by them. Bennett would then pay the producers at a stipulated rate for the wood they had delivered to Boise Southern on his quota, first deducting the stumpage value for direct payment to the landowner.
Bennett, as a pulpwood dealer, also received orders from other paper mills than Boise Southern. He operated a wood-yard at DeRidder and several other locations. However, for present purposes, it is sufficient to note that Woodard exclusively produced all his pine pulpwood for Bennett's account at Boise Southern, and that the occasional load of hardwood pulpwood he occasionally harvested from the pine lands was also produced for Bennett's wood-yard, all to be used by Bennett in filling his orders of pulpwood.
Bennett secured approximately two-thirds of his pulpwood by securing the timber rights himself and then directing his producers to the tract in question. However, he encouraged his producers to seek out and secure their own timber. In these latter instances, the producer would receive an extra 50¢ per cord for their services in so doing. (Nevertheless, in the usual case, the stumpage was still deducted and paid directly to the landowner.)
The plaintiff Woodard operated a truck and a crew of two men producing pulpwood exclusively for Bennett's account. The price of $18.50 per cord, less stumpage of $5.00 paid to the landowner, was paid to him each Friday by Bennett, based upon the slips of pulpwood delivered by him to Boise Southern on the Bennett account. From his net of $13.50 per cord, he paid his helpers and his truck expenses, keeping the surplus of about one hundred dollars per week as compensation for his own primarily manual labors and his own supervision and the use of his truck and equipment.
For at least four weeks before the accident, Woodard had been producing pulpwood for Bennett from the Pope tract. He himself had made arrangements with Pope to purchase the timber rights on this tract (receiving an extra 50¢ per cord for such service). Each week Bennett deducted Pope's stumpage at $5.00 per cord, and made out a check to Pope for such amount.
Bennett had not, however, ever met Pope, nor had he ever gone on the Pope tract. He did not supervise Woodard's operations there.
Woodard had been working for Bennett exclusively for some four months. Prior to that, he had been producing pulpwood exclusively for another dealer. The usual practice of the industry is for a producer such as Woodard to work exclusively for a particular dealer during a period of months or years. However, if another dealer offers a better arrangement to a producer, he may terminate his arrangement with the present dealer and commence producing pulpwood for another.
The indicia relied upon by the previous courts as proving a predominately buyer-seller relationship were: Woodard had full control of his own employees and where they worked; on the Pope tract, he owned and had title to the wood until it was delivered to Boise Southern; he was not under any obligation to furnish Bennett any particular quota of wood, nor was he obliged to sell the wood he produced to Bennett, nor was he subject to any liability if he failed to do so; both Bennett and Woodard were free to terminate their relationship at any time.
Application of Legal Principles to Present Facts
In the light of our decisions cited above, we are unable to agree with the excellently reasoned opinions of the previous courts holding that there was no compensation liability because there was only a buyer-seller relationship between the parties.
*531 As the facts above outlined show, Woodard was in actuality working exclusively to "produce" (cut, haul, and deliver) pulpwood for Bennett. Although theoretically free to sell the pulpwood he produced elsewhere, in actuality he was working exclusively to produce timber for Bennett.
Bennett's trade, business, or occupation was securing pulpwood for sale to paper mills from whom he received orders. To enable him to acquire the quantities of pulpwood he needed, he gave the producers with whom he contracted the forms which authorized them to deliver pulpwood to Boise Southern on his account. Without these forms (by which in effect the dealer parcelled out his order among his producers), Boise Southern would not buy pulpwood from a producer.
Woodard was not producing pulpwood for the open market. (There was, for instance, no open market at Boise Southern for pulpwood.) Instead, the pulpwood produced by Woodard was being processed by him to fill on Bennett's behalf a pre-existing order from Boise Southern to Bennett. The pulpwood produced, incidentally, had to meet certain diameter and size specifications set by Boise Southern.
The previous courts relied upon certain intermediate court decisions, which are inconsistent with the earlier cited decisions of this court, and upon Taylor v. Employers Mutual Liability Ins. Co., 220 La. 995, 58 So.2d 206 (1952).
Taylor concerns distinguishable facts. The deceased employee was a logger, who bought timber rights, logged them, and sold the log to hardwood mills. There was no preexisting order. The logger produced for the open market, rather than for any one source under any continuing arrangement, cf. Vinzant v. L. L. Brewton Pulpwood Co., 239 La. 95, 118 So.2d 117 (1960). The mill told him that it would purchase logs of a certain length and diameter for a certain price. About a month later, the logger was killed while delivering a load of logs to the mill.
The present arrangement is in form cloaked with the same contractual freedom as in Taylor. In fact, however, the present producer Woodard was cutting, hauling, and delivering pulpwood exclusively for Bennett and in order to fulfill Bennett's purchase orders.
Woodard was thus not in actuality a seller producing for the open markethe was instead an independent contractor performing primarily manual work in performance of his contract with Bennett to cut, haul, and deliver pulpwood for Bennett's account.
Woodard was injured in the performance of such work, which is part of Bennett's trade or occupation. Under La.R.S. 23:1061, he is entitled to workmen's compensation benefits since injured while so doing. As we stated in Hart v. Richardson, 272 So.2d 316, 319 (La.1972): "* * * the mere fact that elements of sale are present in the relationship will not defect recovery."
The plaintiff is therefore entitled to workmen's compensation benefits for disability resulting from the injury received while producing pulpwood for Bennett.

Decree
For the foregoing reasons, the judgments of the previous courts are reversed. This case is remanded to the Court of Appeal, Third Circuit, for it to determine the compensation benefits due by reason of the accidental injury sustained by the plaintiff Woodard. The costs of this application to this court are assessed against the defendants-appellees; all other costs are to be assessed upon final termination of these proceedings.
Reversed and remanded.
SUMMERS, J., dissents and assigns written reasons.
MARCUS, J., dissents and assigns reasions.
*532 MARCUS, Justice (dissenting).
I respectfully dissent. In my view, the facts of this case reveal a buyer-seller relationship. Accordingly, there should be no workmen's compensation liability. This is in accordance with the findings of the trial court and the court of appeal.
SUMMERS, Justice (dissenting).
I dissent for the reasons assigned by the Court of Appeal. See 289 So.2d 500.