415 So.2d 523 (1982)
Oliver DROZE
v.
The McCARTY CORPORATION.
No. 14867.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
Howard P. Elliott, Jr., Wayne R. Crouch, Baton Rouge, for plaintiff-appellant Oliver Droze.
Gracella Simmons, Baton Rouge, for defendant-appellee the McCarty Corp. and the Fidelity and Cas. Co. of New York.
Before LOTTINGER, EDWARDS and SHORTESS, JJ.
LOTTINGER, Judge.
This is a workmen's compensation suit by Oliver Droze against his employer, The *524 McCarty Corporation, and his employer's workmen's compensation insurer, Fidelity and Casualty Company of New York. The parties stipulated that the plaintiff was injured while acting within the course and scope of his employment as a carpenter's apprentice. Insurance coverage was also not at issue. From judgment of the trial court denying plaintiff's claim of total and permanent disability, plaintiff has appealed.

FACTS
From the briefs and the record we glean the following:
Plaintiff was injured on January 11, 1979, while on the job as a carpenter's apprentice for The McCarty Corporation, when he attempted to catch a "knuckle" being thrown up to him as he stood on a scaffold. The "knuckle" when caught bent backward plaintiff's thumb, resulting in damage to the joint and ligaments of the thumb. Plaintiff continued to work for The McCarty Corporation until June of 1979, when he was terminated for unavailability of work. Subsequently, plaintiff worked for another employer at Dow Chemical Company, until January 23, 1980.
Plaintiff was examined by Dr. Joe Alvin Morgan on December 12, 1979. Dr. Morgan's tentative diagnosis was that plaintiff suffered from a rupture of the volar plate in the metacarpophalangeal joint of the right thumb. This injury was said to be ligament-related, and Dr. Morgan suggested surgery.
Surgery was performed on January 24, 1980, with equivocal results. Plaintiff continued to see Dr. Morgan, complaining of limited motion and pain in his injured right thumb. Dr. Morgan suggested pinning the joint to determine if the pain would be lessened with immobilization. This procedure was accomplished surgically on May 13, 1980, and plaintiff reported that the pain had decreased. From such relief Dr. Morgan diagnosed that arthritis had developed in the thumb joint. Dr. Morgan suggested fusion surgery to make permanent the relief from pain that plaintiff had experienced by pinning the joint, which surgery plaintiff refused. Plaintiff was discharged by Dr. Morgan on August 6, 1980, with a 25 percent physical impairment of the thumb, which Dr. Morgan stated would exist with or without the fusion surgery.
At the time of plaintiff's injury, he was an apprentice carpenter in the Baton Rouge Carpenter's Joint Apprenticeship Program. He has not performed carpentry-related work since January of 1980, when his thumb was initially operated upon.
The compensation insurer paid plaintiff workmen's compensation benefits commensurate with the schedule loss of a thumb, as per La.R.S. 23:1221(4)(a), for a period of fifty weeks commencing January 23, 1980. This compensation was in the amount of $141.00 per week for thirty-one weeks and $69.00 for nineteen weeks, such compensation ending January 6, 1981. All medical expenses were paid by the insurer.
The trial court held that plaintiff failed to prove any disability, inasmuch as the plaintiff did not attempt to resume his former occupation after the surgery on January 23, 1980. The trial court further held that plaintiff did not suffer so much pain so as to be disabling. The trial court found that the prior benefits paid were the maximum benefits to which plaintiff was entitled, and dismissed plaintiff's suit at his costs.

SPECIFICATIONS OF ERROR
Plaintiff-appellant basically argues that the trial court erred in 1) failing to apply the "odd-lot" doctrine to his claim and 2) holding that no disability had been proven since plaintiff had not attempted to resume work as a carpenter.

I
The Louisiana Supreme Court in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980) and Turner v. American Mutual Insurance Company, 390 So.2d 1330 (La.1980) introduced the "odd-lot" doctrine of total disability into the jurisprudence interpreting La.R.S. 23:1221.
La.R.S. 23:1221 defines total disability as a claimant's inability,

*525 "... to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reasons of education, training, and experience...."
In Oster, supra, the Supreme Court stated that a claimant need not be totally helpless to claim benefits for total and permanent disability. Applying what is known as the "odd-lot" doctrine, the Supreme Court held that a claimant is considered an "odd-lot" worker if he shows that due to his physical impairment, mental capacity, education, training, age, the availability of employment in his area, and any other relevant factor, that he cannot perform the substantial and material parts of some gainful work or occupation with reasonable continuity. The Supreme Court further stated,
"If the plaintiff is successful in showing a combination of factors indicating that the services which he is able to render are so limited in quality, quantity, or dependability that a market for his labor does not exist within which he can effectively compete, he has presented a prima facie case for classification in the odd-lot category. An offering of such proof by the plaintiff, therefore, satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The defendant employer then has the onus of showing that there are jobs which are available to provide a steady income to the plaintiff or that will provide him with `a gainful occupation.'" 390 So.2d 1318, 1324.
The plaintiff contends on appeal that the trial court failed to analyze his claim under the "odd-lot" doctrine. Plaintiff further asserts that he has demonstrated his "odd-lot" status, created by the degree of physical impairment of his thumb, the amount of pain he suffers, and the fact that he has but a high school education.
We do not agree with plaintiff's contention that he has proven his "odd-lot" status. On cross-examination, plaintiff admitted that his physical impairment did not prevent him from driving a vehicle, but did cause him some difficulty in turning on ignitions in certain automobiles. Thus, plaintiff did not demonstrate that he is unable to work as a driver or delivery person or that this type of job is not regularly available to him.
More important is the fact that plaintiff was gainfully employed in a donut shop some two weeks prior to trial, where plaintiff performed the duties of a donut fryer. Plaintiff testified that he was not unable to perform these duties. Plaintiff was terminated from this job not for his inability to perform job functions, but for his lack of punctuality. Again, plaintiff has not demonstrated that he cannot work as a fry cook or that this type of work is not regularly available to him.
Plaintiff argues that he works only in substantial pain, and cites Lattin v. Hica Corporation, 395 So.2d 690 (La.1981) for the proposition that the "odd-lot" doctrine applies also to substantial pain cases, since a claimant's pain may appreciably limit the types of work available to him and may greatly diminish his ability to compete in the labor market. This is an accurate statement of the law, but plaintiff has not proven that he can work only in substantial pain. Medical testimony indicated only that plaintiff would experience some discomfort in attempting to use his right thumb. Plaintiff argues that he experiences much more than mere discomfort in trying to work. However, the trial judge put plaintiff through a battery of simple dexterity tests at trial, evaluating plaintiff's impairments and the amount of his pain. The trial judge thereafter ruled that plaintiff did not suffer so much pain in using the thumb so as to be disabling.[1] *526 This ruling was a credibility call on the part of the trial judge in appraising plaintiff's subjective complaints of pain, since little objective proof of pain was found in medical deposition testimony. We see no manifest error in this regard by the trial judge.
Additionally, the plaintiff testified at trial that he was able to work in the donut shop without using his thumb. The clear inference which arises is that if plaintiff was not required to use his thumb, then his work at the donut shop was performed without substantial pain. Plaintiff is apparently able to accomplish certain functions by "compensating" for his injured thumb, which Dr. Morgan stated in his deposition was necessary and desirable.
We therefore hold that plaintiff has not proven his "odd-lot" status, inasmuch as he has not demonstrated that because of his physical impairments and his pain, the services which he is able to render are so limited that a reasonably stable market for his labor does not exist.

II
Plaintiff-appellant argues that the trial court erred in holding that plaintiff had failed to prove his disability because he did not attempt to resume work as a carpenter's apprentice.
Mr. Bobby Smith, director of the apprenticeship program in which plaintiff was engaged at the time of the accident, testified at trial. Mr. Smith stated that after the accident and prior to the surgery, he observed plaintiff having difficulty driving nails with a hammer while in class. After the surgery, Mr. Smith noted that plaintiff was unable to use his right thumb to depress the door latch on the main entrance to the apprentice school. Because of his pain and infirmities, plaintiff was assigned to light duty classes in the apprenticeship program. Mr. Smith testified that because plaintiff was considered to be convalescing from an injury, plaintiff was not considered in filling demands from employers who sought placement assistance from the apprenticeship program. Even after plaintiff was put into the light duty classes, Mr. Smith observed plaintiff trying to cut metal studs and hang sheetrock using a screw gun, and found that plaintiff's performance was lacking. Mr. Smith stated at trial that plaintiff was unable to do many tasks that are ordinarily expected of carpenters. He further testified that the apprenticeship program recommended that plaintiff seek out vocational rehabilitation to find an alternative to carpentry training.
Dr. Morgan testified that plaintiff's injury would cause difficulties and discomfort with any pinching motion of the thumb requiring a medium amount of pressure, such as connecting electric battery cables, prolonged hammering, or operating an electric skillsaw.
This unrefuted evidence preponderates to the effect that plaintiff is no longer able to perform the duties of a carpenter or carpenter's apprentice. La.R.S. 23:1221(3) provides that partial disability results when the employee is unable to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training or experience. We find that plaintiff has proven by a preponderance of the evidence that he is unable to perform the duties in which he was engaged when injured and for which he is fitted by education and training, despite the fact that plaintiff has not attempted to resume work as a carpenter's apprentice since his surgery in January of 1980. Although plaintiff is not totally and permanently disabled, we hold that he is entitled to benefits for partial disability, pursuant to La.R.S. 23:1221(3). The trial court erred in holding that plaintiff did not prove any degree of functional disability.
Under La.R.S. 23:1221(3), a partially disabled employee is entitled to sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages.
*527 At the time of trial, plaintiff was not gainfully employed. We are not unmindful of the problems that may arise in the application of the present statutory definition of partial disability where the injured worker has not undertaken subsequent employment and the percentage difference between his former wages and subsequent wages cannot be applied. As was pointed out by a panel of this court in Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1st Cir. 1977), a partially disabled worker's failure to obtain subsequent employment may be based on sound reasons, or may be based on the worker's arbitrary decision to receive compensation benefits in lieu of seeking gainful employment. This determination is one of fact, and is within the province of the trial court should it arise, inasmuch as a workmen's compensation judgment may be reviewed and an appropriate modification made on application to the district court in accordance with La.R.S. 23:1331. Kilbourne, supra.

DECREE
Therefore, for the above and foregoing reasons, judgment of the trial court is hereby reversed, and there is now judgment in favor of plaintiff, Oliver Droze, awarding him compensation benefits for partial disability, pursuant to the provisions of La. R.S. 23:1221(3). Such benefits shall commence January 23, 1980, and shall be received during the period of disability, not to exceed 450 weeks. Said disability benefits are subject to a credit of $141.00 per week for 31 weeks commencing January 23, 1980, and subject to a credit of $69.00 per week for 19 weeks thereafter, representing prior benefits paid.[2] Legal interest shall accrue on all past due installments owed from date due until paid. Costs of this appeal are assessed to defendants-appellees.
REVERSED AND RENDERED.
NOTES
[1] For an example of a case where a claimant was granted total and permanent disability because of his substantial pain, see Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980).
[2] La.R.S. 23:1221(3) and 23:1223 provide for an employer to receive a credit for disability compensation payments made prior to judgment in favor of claimant. This court in Jacks v. Banister Pipelines America, 396 So.2d 604 (La.App. 1st Cir. 1981), held that the employer would receive a credit also where it has paid benefits under the scheduled loss and employee is later adjudged partially disabled, even though the above-cited statutes are not strictly applicable to such a situation, which is present in the instant case.