COLE, Judge.
This is a workers’ compensation case in which plaintiff seeks compensation benefits from defendant Reed & Sims, Inc. The primary issues are whether plaintiff is entitled to compensation as a “working independent contractor,” and if so, what is the extent of his disability.
Plaintiff cut his left hand on July 7, 1979 with a chain saw while harvesting timber. At the time of the accident he had been engaged for about six months in a timber-producing arrangement with defendant Reed & Sims, whereby he delivered wood to International Paper Company’s Roseland woodyard to help fulfill Reed & Sims’ purchase orders with International. The loads of pulpwood were weighed by International, who then gave plaintiff “timber tickets” as a receipt which plaintiff presented to Reed & Sims for payment. Except on one occasion, plaintiff secured his own lumber which he cut and delivered without any supervision and control by Reed & Sims. Plaintiff then paid his “stumpage” costs to the landowner out of his proceeds from Reed & Sims. Plaintiff was paid by the amount of wood he delivered, and no with-holdings were made for social security, income tax, disability and compensation insurance. The plaintiff, who worked with his family, used his own equipment to perform the work. Although Reed & Sims does have about 15 employees who do similar work at a fixed salary, with Reed & Sims’ equipment, and for whom payroll deductions are made, Reed & Sims also uses 20 to 25 other “independent producers” like plaintiff.
After he was injured, the plaintiff wrote Reed & Sims and asked whether he was covered by their insurance. At the time, Reed & Sims was covered by a “blanket accident policy” which was issued by defendant Hermitage Health & Life Insurance Company. Under the provisions of this policy, Hermitage agreed to pay to Reed & Sims a certain amount of money in the event one of their employees was injured in the course and scope of his employment with them. An endorsement to the *901 policy listed “for the purposes of this policy only” certain persons, including the plaintiff, who “shall be deemed employees of the policy owner” Reed & Sims. Reed & Sims filed a claim on this policy after plaintiff was injured and received certain monetary benefits which it in turn endorsed over to plaintiff. Plaintiff alleges he was therefore led to believe he was covered by the Hermitage policy.
On December 18, 1979, however, Hermitage received a report from Dr. Joe Morgan, plaintiff’s orthopedic surgeon who specializes in hand injuries, in which he released plaintiff to return to work. Hermitage then ceased making payments to Reed & Sims insofar as plaintiff’s injury was concerned. Due to the termination of benefits under the Hermitage policy and Reed & Sims’ position that it owed plaintiff no compensation, plaintiff filed suit on March 14, 1980, seeking compensation benefits for total disability and penalties and attorney fees resulting from Reed & Sims’ alleged arbitrary refusal to furnish medical information and for its refusal to pay compensation benefits. Plaintiff also sought further benefits under the Hermitage policy. Named as defendants were Reed & Sims, Inc., the Hermitage, and Hermitage’s general agent and administrator, Gulf States Underwriters of Louisiana. Hermitage and Gulf States filed the peremptory exception raising the objections of no right of action and no cause of action. The exception was denied and the case went to trial, resulting in a dismissal of plaintiff’s suit as to all defendants.
The trial court held plaintiff was neither an employee nor a statutory employee of Reed & Sims. Instead, it found plaintiff to be an independent contractor and, as such, unentitled to compensation from Reed & Sims. However, La.R.S. 23:1021(5) allows an independent contractor who spends a substantial portion of his time in manual labor carrying out the terms of the contract to receive compensation like an employee. Compensation is allowed in such a case even though the transaction between the principal and the contractor includes incidents of a buyer-seller relationship. Hart v. Richardson, 272 So.2d 316 (La.1973). However, the contract must be to perform work which is a regular part of the principal’s trade, business, or occupation. La.R.S. 23:1035.
In Woodard v. Southern Casualty Insurance Co., 305 So.2d 528, 529 (La.1974), the court stated:
“... the determinative issue is thus whether the ‘producer’ (i.e., the contractor/seller) who cuts, hauls, and delivers the timber to the ‘dealer’ (i.e., the principal/buyer), is so processing the timber for the open market or is instead doing so on behalf of the dealer as part of the latter’s trade, business, or occupation.”
The Woodard case involved an almost identical factual situation as is presented by the present case. Even though the producer in Woodard worked without any supervision or control by the dealer, used his own equipment, often purchased his own timber rights, and theoretically was free to sell wood to other companies and to terminate the relationship at any time, the court still allowed compensation since in actuality the producer was working exclusively to produce timber for the dealer. As in the present case, the producer in Woodard delivered his timber to a major paper company to help fulfill the dealer’s pre-existing purchase orders. The only real difference in this case is that the producer here usually paid his own stumpage costs, whereas in Woodard the stumpage was deducted from the producer’s pay and paid directly to the landowner. We attach no distinguishing significance to this difference. We conclude that plaintiff was entitled to compensation from Reed & Sims. The evidence adduced at trial clearly showed the plaintiff had been working exclusively to produce timber for Reed & Sims from January to June of 1979. He was not in fact producing for the open market. Reed & Sims’ business and trade was to secure pulpwood for sale to paper mills. Plaintiff was injured while performing work which was part of Reed & Sims’ business. The law is clear *902 that such an employer cannot evade its responsibility for compensation benefits by hiring an independent contractor to perform the regular duties of an employee. Alexander v. Reed, 350 So.2d 179 (La.App. 1st Cir.1977), writ denied 350 So.2d 1206 (La.1977).
We next address the extent of plaintiff’s disability. Plaintiff sustained a laceration across the top of his left hand between his index and middle fingers. He was initially treated at Lallie Kemp Hospital and was then transferred to Charity Hospital in New Orleans to have a lacerated extension tendon repaired. Plaintiff then returned to Lallie Kemp, where he was periodically treated until August 21. The wound had healed well, though plaintiff’s hand was still tender to extremes of movement. However, plaintiff went to see his personal physician, Dr. Reginald Goldsby, on September 24 and October 8, complaining of pain. Dr. Goldsby gave plaintiff some pain medication and some anti-inflammatory medicine. He diagnosed plaintiff’s problem as chronic tendonitis and referred him to Dr. Joe Morgan, a hand specialist in Baton Rouge.
Dr. Morgan first saw plaintiff on October 17,1979. Plaintiff was having trouble flexing his middle and ring fingers on his left hand, though he had a full range of motion in his left thumb, index and little fingers. Dr. Morgan diagnosed the problem as adhesive capsilidus (a thickening of the joint capsules caused by the formation of scar tissue along the tendons) in plaintiff’s middle and ring fingers. Plaintiff was given a “knuckle-bender,” an outrigger device designed to improve movement in his fingers.
On November 14, 1979, plaintiff returned to Dr. Morgan complaining of a poor grip and weakness in his left hand. Plaintiff had not been wearing his knuckle-bender. While plaintiff still had decreased grip strength in his left hand, x-rays revealed no fractures, dislocations, or degenerative changes in the hand. Plaintiff was given a cortisone injection and was told to use and exercise his hand as much as possible. When plaintiff returned to see Dr. Morgan on December 12, 1979, plaintiff’s hand was slowly improving. Though he still could not make a tight fist, he had regained a fair grip with his hand. Dr. Morgan therefore told plaintiff he was capable of returning to work starting December 13. However, plaintiff refused to return to work since he felt he was incapable of getting an adequate grip on a chainsaw.
Plaintiff returned to Dr. Morgan on February 13, 1980 complaining of pain. He returned again on April 14 and on July 2, 1980, and both times he exhibited increased motion in his fingers. Dr. Morgan discharged plaintiff effective September 8, 1980 with a permanent partial disability of 15 percent in the two fingers and a 5 percent disability of the left hand as a whole. Plaintiff returned to Dr. Morgan at the request of his attorney on March 23, 1981. He again showed increased motion in his fingers. At this time his hand showed callouses and inground dirt reflecting work. Plaintiff admitted at trial he had been doing some farming and had probably gotten the callouses from driving his produce to market.
At trial, Dr. Goldsby again examined plaintiff and found his grip strength in his left hand still to be decreased. Dr. Goldsby admitted he was not qualified to express an opinion as to whether plaintiff could handle a chain saw, though he expressed some doubt as to whether plaintiff’s grip would be adequate. Dr. Morgan, however, felt plaintiff could adequately perform his work. Though he believed plaintiff might have some trouble gripping small objects such as a pencil, he felt plaintiff could handle larger objects such as a chain saw.
From this evidence, we conclude plaintiff was temporarily totally disabled from the time of the accident on July 7, 1979, until December 13, 1979, the date Dr. Morgan deemed him capable of returning to ■work. Although plaintiff contends he is still disabled since he cannot perform his regular duties without substantial or appreciable pain, he must establish the existence of such a condition to a reasonable certainty by a fair preponderance of the evidence. *903 There is some indication that plaintiff would suffer some pain in returning to work, but there is no indication that such pain would be substantial enough to be disabling or dangerous to himself or his fellow employees. See Hollis v. Travelers Ins. Co., 368 So.2d 154 (La.App. 3d Cir.1978). Plaintiff has thus far refused to even try to resume his regular employment, though he has used his left hand in farming and carpentry work. Though his regular employment would require much effort from plaintiff’s left hand, Dr. Morgan believes the more plaintiff uses his hand, the more it will improve. We see no reason to discourage this man’s rehabilitation.
We therefore conclude plaintiff was entitled to 23 weeks of compensation benefits resulting from his injury. Plaintiff’s wages were such that he is entitled to the statutory maximum of $141.00 per week which was in effect for the year beginning September 1, 1978. However, Reed & Sims refused to ever set a weekly rate of compensation, nor did it ever pay plaintiff anything until October 25, 1979 when it first gave plaintiff the money it received under the Hermitage policy. These payments, which totaled $2,800, must be credited to the amount of compensation due, since they were paid and received as compensation. See La.R.S. 23:1206; Gonzales v. Coastal Wire Warehouse, Inc., 328 So.2d 923 (La.App. 4th Cir.1976); Caston v. Combined Insurance Company of America, 308 So.2d 287 (La.App. 1st Cir.1975). After applying this credit, plaintiff is still due $443.00.[1]
We also find that Reed & Sims is a self-insured employer insofar as the plaintiff is concerned. Aware of its possible compensation liability to plaintiff, it entered into an insurance agreement with Hermitage to cover any such exposure. This policy is an accident indemnity policy, not a workers’ compensation policy. Plaintiff, however, seeks to recover benefits which he believes he is entitled to under tne policy. This same policy was previously examined in Crowley v. Hermitage Health and Life Ins. Co., 391 So.2d 53 (La.App. 3d Cir.1980), where the court held the injured employee-plaintiff to be without an actionable right to sue under the policy as a third-party beneficiary. In Crowley, the court properly concluded:
“. .. this policy was designed specifically to provide indemnification protection for the employer, Boswell, and that it in no way attempts to establish indemnification protection for the employees of Boswell. This is borne out by the very terms of the agreement specifically providing that all '^benefits are payable to Boswell or to persons rendering services to Boswell’s employees.” (391 So.2d at page 55.)
We likewise conclude the policy contained no stipulation in favor of plaintiff; his sole remedy is against Reed & Sims.
The plaintiff contends finally he is entitled to penalties and attorney’s fees. Under La.R.S. 23:1201.2, a self-insured employer who arbitrarily and capriciously fails to pay benefits within 60 days of receipt of written notice is liable for “12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney’s fees for the prosecution and collection of such amount.” In Brewton v. L.L. Brewton Lmbr. Co., Inc., 349 So.2d 1364 (La.App. 2d Cir.1977), writ denied, 352 So.2d 240 (La.1977), the employer claimed to contest seriously and in good faith its compensation liability under a similar factual situation. Nevertheless, the court still assessed the penalties and attorney’s fees since “the law is well settled as applied to the established facts.” We likewise believe plaintiff is entitled to a 12% penalty on the $443.00 we have found to be due. In addition plaintiff is entitled to attorney’s fees in the amount of $3,000.00.[2]
*904 Plaintiff also seeks further penalties and attorney’s fees under La.R.S. 23:1125. That statute allows a $250 penalty and reasonable attorney’s fees whenever an employee “at the request of the employer” submits to a medical examination, the employer receives a medical report, and the employer without just cause fails to furnish a copy of the report to the employee within thirty days of written demand. Since Reed & Sims did not request plaintiff to submit to any medical examinations, this statute is inapplicable.
DEGREE
Therefore, for the above and foregoing reasons, judgment of the trial court is hereby reversed insofar as it held plaintiff un-entitled to compensation, and there is now judgment in favor of plaintiff, Frank Parnell, and against defendant, Reed & Sims, Inc., for compensation in the amount of $443.00, plus 12% thereof as a penalty, and for the additional amount of $3,000.00 representing attorney’s fees; the compensation to bear legal interest from its due date and the penalty and fee to bear legal interest from date of judicial demand therefor.
The judgment appealed from is affirmed insofar as it dismissed plaintiff’s claims against Hermitage Health & Life Insurance Company and Gulf States Underwriters of Louisiana. Appellee Reed & Sims, Inc. is to pay all costs.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. This sum represents approximately three weeks compensation and each weekly segment thereof bears legal interest from its due date. See Droze v. McCarty Corp., 415 So.2d 523 (La.App. 1st Cir.1982); Rachal v. Highlands Ins. Co., 355 So.2d 1355 (La.App. 3d Cir. 1978), writ denied, 358 So.2d 645 (La.1978).

. The 12% penalty and the $3,000.00 attorney’s fee bear legal interest from date of judicial *904 demand therefor. See Coulton v. Levitz Furniture Corp., 391 So.2d 80 (La.App. 4th Cir.1980).