FRED W. JONES, Jr., Judge.
Plaintiff sued her former employer for worker’s compensation benefits, alleging fumes in the air at her former place of employment caused her to suffer disabling upper respiratory problems. From a judgment rejecting her demands, plaintiff appealed. For the following reasons, we affirm.
Plaintiff, Brenda Hamilton, went to work for Southern Plastics, Inc. in 1977. The company, which began operations in 1967 primarily producing industrial plastic parts, started changing over in 1977 to producing plastic drug products and containers for food items. Ms. Hamilton operated a machine which, in an entirely closed process, melted small plastic pellets and injected the melted plastic into molds which shaped it into various products. These products were cooled, ejected, picked up by the employee, and packed in boxes.
Ms. Hamilton contended that sometime in 1984 and continuing through 1986 she experienced serious respiratory problems that resulted in numerous absences. She asserted her job required her to come into contact with several chemicals to which she developed a sensitivity caused by repeated exposure and her decreasing tolerance level. These chemicals allegedly caused Ms. Hamilton to develop polypoid mucous membrane in her sinuses due to chronic irritation and recurrent infection, as well as loss of voice and edema of the vocal cords.
It was further contended that Ms. Hamilton quit her job on the advice of a physician in the spring of 1986, after being off two weeks without pay for excessive absenteeism. When a prospective hotel job did not materialize, she collected unemployment benefits as long as she was qualified and eventually went to work at Albertson’s on a part-time basis for a considerable decrease in pay from her former employment.
This litigation ensued, with Ms. Hamilton claiming her physical problems were caused by fumes and plant conditions at work; these conditions caused her to suffer an “accident” within the meaning of our worker’s compensation laws; and claimant was entitled to supplemental earnings benefits because of the lower paying job.
At the trial, plaintiff testified substantially in accordance with the described allegations. She denied that her condition was due to factors other than conditions of her former employment. However, medical records indicated that she suffered asthma from childhood, had a congenital defect (la *1018 ter corrected by surgery) that made breathing through her nose difficult, and smoked one and a half to two packs of cigarettes a day for ten years. Further, in answers to interrogatories, plaintiff indicated she still suffered from many of her respiratory problems after leaving work with defendant.
Plaintiffs physician, Dr. Bosley, testified he believed her condition was related to hydrocarbon fumes she claimed to inhale at her former place of employment. The observation of the doctor was based solely upon information furnished by plaintiff. He saw no test result of the air at the plant nor was he able to isolate any chemical that was responsible for her condition. The physician admittedly speculated about the presence of plastic fumes.
In support of its position Southern Plastics presented extensive evidence of air quality tests made by an independent laboratory. Dr. Helmut Redetzki, an expert toxicologist, testified for the defendant. After reviewing the initial set of air quality tests, he ordered other tests to be done and made a personal, on-site examination of the plant. He testified the air in the plant was of good quality.
Moreover, all of the chemicals tested were well below accepted standards required by OSHA. Dr. Redetzki testified ethane, one of the chemicals tested, does have some irritant qualities when present in large quantities ... far above the .5% per million found in this plant. The only chemical tested above the .5% level was styrene. OSHA standards state styrene can be 100 parts per million for a 50 hour work week safely ... before adverse effects are felt. The styrene test here in one location, from the top of one of the machines, tested at 2.2% per million.
Furthermore, Dr. Redetzki reviewed all of the claimant’s medical records and noted she had a history of respiratory diseases, particularly asthma in childhood and probably a recurring bronchitis. He also noted Hamilton’s smoking history — about two packs a day since age 18 — was reported in her medical examinations and records. Dr. Redetzki stated smoking is an irritant influence on airways that causes emphysema, lung cancer, chronic bronchitis, reactive obstructive airway disease, and cancer of the larynx and bronchi. He stated there is a cumulative effect of smoking.
The president of Southern Plastics, who had been with the company since 1967, testified the production had not changed between the time the plaintiff left his employment and the time the tests were taken. The plaintiff did not rebut the air quality tests nor did she present any evidence to indicate the production had been changed between her resignation date and the time the tests were made.
In a written opinion rejecting plaintiff’s demands, the trial court stated:
“The evidence presented by the defendant as to air quality at defendant’s plant is convincing and established that plaintiff’s problems were not caused or aggravated by the air at defendant’s plant. It is significant that there have been no other complaints like those of plaintiff at the plant in 20 years of operations.
The Court believes other factors, such as a prior history of asthma as a child, a long history or smoking, yelling at the plant, difficulty in breathing through the mouth since birth, and cold weather (plaintiff agreed that her respiratory problems were worse in fall and winter months) are likely to be the cause of her upper respiratory problems.”
The principal issue on appeal is whether plaintiff proved she suffered an on-the-job “accident” within the meaning of our worker’s compensation laws.
If an employee suffers personal injury by accident arising out of and in the course of employment, his employer must pay compensation. La.R.S. 23:1031. The disability is compensable only if it results from a work-related accident. Parks v. Ins. Co. of North America, 340 So.2d 276 (La.1976). The employee has the burden of proving an accident occurred and his disability is a result of the accident. Allor v. Belden Corp., 393 So.2d 1233 (La.1981); Price v. Mitchell Const. Co., Inc., 482 So. *1019 2d 869 (La.App. 2d Cir.1986), writ denied, 484 So.2d 671 (La.1986).
The claimant in a worker’s compensation case must establish causation by a preponderance of the evidence showing a connection between the alleged disability and the accident at issue. Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982); Carter v. P.K. Smith Chevrolet-Olds, Inc., 438 So.2d 655 (La.App. 2d Cir.1983), writ denied, 443 So.2d 595 (La.1983). This burden requires factual evidence from which it may be concluded that it is more probable than not an accident occurred and caused disability. Harris v. Halliburton Co., 501 So.2d 985 (La.App. 2d Cir.1987).
Medical testimony must be weighed in the light of other credible evidence of a non-medical character, such as a sequence of symptoms or events, in order to judicially determine probability. Celestin v. Fireman’s Fund Ins. Co., 430 So.2d 1263 (La. App. 1st Cir.1983); Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982). The plaintiffs case must fail if the totality of the evidence leaves the probabilities equally balanced or leaves the possibility of a causative accident to speculation or conjecture. Prim v. City of Shreveport, 297 So.2d 421 (La.1974); Jones v. Alexander d/b/a White’s Auto Store, 399 So.2d 216 (La.App. 2d Cir.1981), writ denied, 400 So.2d 1383 (La.1981).
La.R.S. 23:1021(1) defines “accident” as any unforeseen or unexpected event, happening suddenly and violently, with or without human fault, that produces objective symptoms of an injury. The statutory definition of accident was not changed by the revision of Title 23 in 1983, but it has been broadened by jurisprudential application before and after the revision. In one case decided by this court it was held this definition of accident included a foot condition that evolved over a length of time which was caused by the strain and stress of constant standing and walking required in the claimant’s job. McCoy v. Kroger Company, 431 So.2d 824 (La.App. 2d Cir.1983).
In McCoy the court found a causal connection between the plaintiff’s required standing and walking at work and the plaintiff’s injury, supra at 827.
This court held in Malloy v. AT & T Consumer Products, 475 So.2d 80 (La.App. 2d Cir.1985) that an “accident” has occurred if the conditions of employment provided continual strain or trauma, or exposure, and the events cumulatively combine to aggravate a preexisting condition so as to disable the employee.
Hamilton reiterates on appeal her argument she has suffered an “accident” under the worker’s compensation law since her pre-existing respiratory condition gradually worsened over the period of time she was employed. She claimed she was habitually better on Mondays and worse at the end of the work week — Fridays. Her physician supported her position claiming she would not have been better on Monday and worse on Friday if her employment environment did not affect her respiratory problems.
Defendant maintains Hamilton must prove an “exposure” before she can allege her respiratory problems result from an “accident” within the workers’ compensation law. Hamilton did not identify anything to which she was exposed. Her denial of her childhood asthma ailment damaged her credibility as did the evidence she had annual respiratory ailments and had not been free of respiratory problems since leaving defendant’s employ (although she claimed she had).
Whether or not such a causal relationship exists between the disability and the alleged work-related accident is a question of fact, and on appellate review, the trial court’s findings as to the questions of fact, must not be disturbed in the absence of manifest error. Crump v. Hartford Accident and Indemnity Co., 367 So.2d 300 (La.1979). In a compensation proceeding where there is direct conflict between the testimony of the claimant’s witnesses and the testimony of the defendant’s witnesses, great weight should be given to the finding of the trial judge who saw and heard the witnesses. Vinzant v. L.L. Brewton Pulpwood Co., 118 So.2d 117, 239 La. 95 (1960). Courts have found it entirely proper, and in fact, the duty of the trial judge in worker’s *1020 compensation cases to evaluate the testimony of all the witnesses, both lay and medical, and after making such evaluations, to accept or reject the opinion by any medical expert depending on how impressed he is with the witness’ qualifications, credibility and testimony. Irvine v. Sentry Ins. Co., 415 So.2d 467 (La.App. 1st Cir.1982); Miles v. Dolese Concrete Co., 507 So.2d 2 (La. App. 1st Cir.1987), writ granted, 508 So.2d 808 (La.1987), affirmed 518 So.2d 999 (1988).
After our review of the record evidence, we cannot say the trial judge was clearly wrong in finding plaintiff did not prove she suffered an accident while working for the defendant. Consequently, plaintiff is not entitled to the worker’s compensation benefits claimed. Because of this ruling, we pretermit consideration of other specifications of error raised by plaintiff.
For these reasons, the judgment of the trial court is AFFIRMED, at plaintiff-appellant’s cost.