690 So.2d 902 (1997)
Ronald BANDY, Plaintiff-Appellee,
v.
INTERNATIONAL PAPER COMPANY, Defendant-Appellant.
No. 29085-CA.
Court of Appeal of Louisiana, Second Circuit.
February 26, 1997.
Rehearing Denied March 27, 1997.
*904 Mayer, Smith & Roberts by Frank K. Carroll, Shreveport, for Defendant-Appellant.
Mills, Timmons & Flowers by William T. Allison, Shreveport, for Plaintiff-Appellee.
Before WILLIAMS, STEWART and CARAWAY, JJ.
WILLIAMS, Judge.
In this worker's compensation action, the defendant, International Paper Company ("I.P."), appeals a worker's compensation hearing officer's judgment finding that the claimant, Ronald Bandy, was injured in a work-related accident and was entitled to temporary, total disability benefits and medical expenses. For the following reasons, we amend and affirm as amended.

FACTS
The claimant, Ronald Bandy, was employed by the defendant, I.P., as a truck driver. At approximately 2:00 a.m. on a Saturday morning in January 1994, claimant returned from his last delivery of a 70-hour work week. According to the claimant, the temperature was well below freezing at the time and he was fatigued. As the last driver to return to the I.P. yard, the claimant was responsible for moving loaded truck trailers away from the loading docks. This process required the claimant to back the truck cab under each trailer, manually hook the trailer to the truck, and drive to the parking lot. Then, he had to manually unhook the loaded trailer, attach an empty trailer and back the truck into the loading area. On the night in question, claimant moved approximately twelve trailers in a period of two hours, requiring him to repeatedly leave the warm truck cab to work in the sub-freezing weather. The claimant returned to work the following Monday with a fever, cough and sore throat. He continued to work for approximately one month before seeking medical treatment.
On February 14, 1994, Dr. Marvin K. Soileau examined claimant, who reported respiratory problems, shortness of breath and a cough. Dr. Soileau found secretions in claimant's lung tissue, indicating pneumonia or possible early congestive heart failure, and admitted him to the hospital. Based on claimant's lack of a fever and his other symptoms, Dr. Soileau concluded the pneumonia was viral in origin. The claimant's condition improved and he was discharged from the hospital a week later. Subsequently, he returned to work.
On July 20, 1994, claimant returned to Dr. Soileau with symptoms of congestive heart failure, including shortness of breath and swelling in his legs. Dr. Ellis Cooper, a physician board certified in internal medicine, also examined claimant and admitted him to Willis Knighton Medical Center in Shreveport. X-rays indicated that claimant suffered from an enlarged heart, pulmonary vascular congestion and fluid in the lungs. Dr. Cooper diagnosed claimant as having congestive heart failure.
Dr. Michael Futrell, a board certified cardiologist, also treated claimant during his July and August hospitalization. Dr. Futrell testified that claimant's history of hypertension, smoking, obesity, diabetes and prior coronary heart disease may have contributed to his cardiomyopathy. However, Dr. Futrell opined that the probable cause of claimant's *905 congestive heart failure was a viral infection (viral myocarditis), which he contracted in January. According to Dr. Futrell, the two most common viruses that attack the heart are Coxsackie A and B and the Echo virus. He testified that these viruses may begin to damage the heart within a period of three to five days after the virus enters the blood stream.
The defendant paid claimant short-term weekly benefits of $154.00 during the periods of February 14, 1994 to March 5, 1994; July 30, 1994 to August 29, 1994; and September 14, 1994 through January 1995, when claimant began receiving monthly Social Security disability payments of $1,248.70. In February 1995, the claimant filed a claim for worker's compensation benefits against I.P., which is self-insured. After a hearing, the worker's compensation hearing officer found that the claimant was injured as the result of a work-related accident. The hearing officer concluded that claimant was entitled to receive temporary total disability benefits of $319 per week from February 14, 1994 until such time as the judgment is modified, subject to a credit for amounts already paid and an offset for Social Security disability payments received. The hearing officer also found that defendant was liable for all medical expenses related to the claimant's congestive heart failure. The defendant appeals.

DISCUSSION
In two of its assignments of error, the defendant argues the hearing officer erred in applying the provisions of LSA-R.S. 23:1021(1) and in finding that the claimant's work activity constituted an accident under the statute. Defendant contends that claimant failed to satisfy his burden of proving a causal connection between his work activity and the disabling heart-related condition.
If an employee suffers personal injury by accident arising out of and in the course of employment, his employer must pay compensation. LSA-R.S. 23:1031(A); Hamilton v. Southern Plastics, Inc., 535 So.2d 1016 (La.App. 2d Cir.1988), writ denied, 536 So.2d 1223 (1989). The claimant in a worker's compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Bruno v. Harbert International Inc., 593 So.2d 357 (La.1992); Williams v. Jones Truck Lines, Inc., 27,465 (La.App. 2d Cir. 11/1/95), 662 So.2d 867. Proof by a preponderance of the evidence is sufficient where the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App. 2d Cir.1991).
A worker's testimony alone may be sufficient to prove a work-related accident, provided that other evidence does not discredit or cast serious doubt upon the worker's version of the accident and his testimony is corroborated by the circumstances following the incident. Bruno v. Harbert International Inc., supra; Lubom v. L.J. Earnest, Inc., supra. A claimant's disability is presumed to have resulted from an accident if before the incident he was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously thereafter manifest themselves. There must be sufficient medical evidence to show a reasonable possibility of a causal connection between the accident and the disabling condition, or the nature of the accident must raise a natural inference that such a connection exists. Lubom v. L.J. Earnest, Inc., supra.
LSA-R.S. 23:1021(1) defines "accident" as an unexpected or unforeseen actual event happening suddenly or violently, with or without human fault, and producing at the time objective findings of an injury. The event which triggers compensation coverage may be an unexpected change in the employee's physical condition which renders him incapable of working and which is caused, at least in part, by an employment incident. Bradley v. Morton Thiokol, Inc., 27,411 (La. App. 2d Cir. 9/29/95), 661 So.2d 691.
In the present case, claimant described the work incident in which he was moving truck trailers by himself in adverse weather conditions. His account was corroborated by a co-worker, Damon Roper, who testified that he remembered the event described by claimant and that the temperature was "in the teens" that night. The claimant testified that following *906 this episode, he experienced shortness of breath, a sore throat and a cough. When he initially saw Dr. Soileau, claimant related the onset of these symptoms to the particular event of moving trailers in extreme cold.
The record contains evidence that claimant's employment activity produced a change in his physical condition. Dr. Soileau discovered fluid or secretions in claimant's lung tissue and determined that he had viral pneumonia. Dr. Soileau stated that it was a reasonable possibility that claimant's fatigue and exposure to extreme cold reduced his ability to resist contracting the viral infection. Similarly, Dr. Cooper and Dr. Futrell testified that fatigue and physical exertion in sub-freezing temperatures would make claimant more likely to succumb to respiratory infection. The hearing officer was aware of the parties' stipulation regarding the dispute in the medical community about the effect that exposure to cold, stress and fatigue have on a person's immune system. However, based on the evidence in the record, the hearing officer could reasonably conclude that claimant's January 1994 work activity, consisting of moving trailers for two hours in adverse weather conditions, constitutes an accident which produced symptoms of a viral infection. The assignments of error lack merit.

Causation
Defendant contends that claimant failed to establish by clear and convincing evidence that his physical work stress was either unusual compared to that of the average worker, or the predominant and major cause of his heart-related illness, as required by LSA-R.S. 23:1021(7)(e). The claimant argues that the viral infection caused a cardiomyopathy, and that the resulting congestive heart failure is a complication of a compensable injury contracted during his employment.
An employer is liable for worker's compensation when the initial injury is aggravated by medical complications or a subsequent injury, whether due to improper medical treatment or otherwise, if the complications are caused by the work-related injury. Blount v. Cooper Stevedoring Co., Inc., 416 So.2d 358 (La.App. 4th Cir.1982); Fields v. Sperry Rand Corp., 343 So.2d 339 (La.App. 2d Cir.), writ denied, 345 So.2d 902 (La.1977).
In the present case, the expert medical testimony established that claimant's disabling congestive heart failure was causally related to the viral infection. In 1980, the claimant had suffered a heart attack caused by coronary artery disease. However, Dr. Futrell and Dr. Cooper opined that the 1980 atherosclerotic heart disease did not cause the 1994 cardiomyopathy. There was evidence that this condition had not worsened, since the artery had recanalized and opened wider.
Dr. Cooper testified that both viral pneumonia and longstanding hypertension coupled with the resultant enlarged heart, could cause congestive heart failure. However, he did not believe that claimant's hypertension, or any of his other pre-existing conditions, was the major contributory factor to the cardiomyopathy. Dr. Futrell opined that the viral infection, or viremia, played the severe contributing role in claimant's cardiomyopathy. In addition, Dr. Soileau testified that a viral weakening of the heart muscle itself was the more probable cause of the cardiac myopathy.
A hearing officer's findings of fact are subject to the manifest error standard of review. Charles v. Travelers Ins. Co., 627 So.2d 1366 (La.1993). An employer is obligated to furnish all necessary medical expenses related to the work injury. Knotts v. Snelling Temporaries, 27,773 (La.App. 2d Cir. 12/6/95), 665 So.2d 657. On the basis of the expert testimony in the record, we cannot say that the hearing officer was clearly wrong in finding that the claimant's congestive heart failure was a complication or natural sequelae of the initial work-related viral infection. Therefore, the defendant is responsible for all reasonable and necessary expenses related to medical treatment of the claimant's congestive heart disease.
The defendant argues that the claimant's heart-related illness is not compensable unless he has met the criteria set forth in LSA-R.S. 23:1021(7)(e). In support of its position, defendant cites Charles v. Travelers Ins. Co., *907 supra, which involved a worker alleging that he suffered a heart attack in the course of his employment. However, that case can be distinguished from the present situation, where the preponderance of the evidence shows that claimant's congestive heart illness resulted as a consequence of the original work injury. Thus, LSA-R.S. 23:1021(7)(e) is not applicable. The assignment of error lacks merit.

Disability
The employer argues the hearing officer erred in awarding claimant temporary total disability benefits for the period from March 7, 1994 to July 30, 1994. The defendant contends the claimant was performing his normal job duties during that time, and was not physically unable to work.
Where a worker's compensation claimant seeks temporary total disability benefits, he bears the burden of proving by clear and convincing evidence that his injury prevents him from engaging in any employment. LSA-R.S. 23:1221(1). Here, claimant was awarded temporary total disability benefits from the date of February 14, 1994. However, there is no evidence that claimant was physically unable to engage in employment during the period of March 7, 1994 to July 29, 1994. In fact, claimant acknowledged that he worked and earned wages at I.P. during that time. After reviewing the record, we conclude that the hearing officer erred in awarding temporary total disability benefits for those weeks when the claimant was actually employed.

CONCLUSION
For the foregoing reasons, the hearing officer's judgment finding that claimant sustained a work-related injury, awarding temporary total disability benefits and ordering defendant to pay medical expenses is amended to reflect that claimant is not entitled to receive benefits for the period from March 7, 1994 to July 29, 1994. We affirm the judgment as amended. Costs of this appeal are assessed to the appellant, International Paper Company.
AMENDED; AND AFFIRMED AS AMENDED.
CARAWAY, J., dissents with written reasons.
CARAWAY, Judge, dissenting.
I respectfully dissent from the majority's conclusion that plaintiff's exposure to cold weather was an employment-related accident that caused significant injury to his immune system allowing for a viral infection. Without detailing the onset of his condition over the weekend after the incident, plaintiff merely reported that when he returned to work on Monday, he was "running a fever" and "had a cold, sore throat." He worked in that condition for three to four weeks progressively worsening until he sought medical attention.
From this rather vague medical inception of the plaintiff's condition, the issue of causation relating colds and viral infections to a workplace accident should be assessed more cautiously. Much effort and analysis was devoted in this case by the parties and the hearing officer to the explanation of how the "fever," "cold" and "sore throat," with which Mr. Bandy returned to work on Monday following his stressful work week, later became congestive heart failure. Nevertheless, I view the threshold question as whether the initial viral infection, which only later caused Mr. Bandy to miss work, was already sufficiently job-related on that Monday morning when measured under the Act's concept of accidental injury.
If an employee suffers personal injury by accident arising out of and in the course of employment, his employer must pay compensation. La.R.S. 23:1031(A); Hamilton v. Southern Plastics, Inc. 535 So.2d 1016 (La. App. 2d Cir.1988), writ denied, 536 So.2d 1223 (1989). La.R.S. 23:1021(1) defines "accident" as follows:
(1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a *908 gradual deterioration or progressive degeneration.
La.R.S. 23:1021(7)(a) defines "injury" as follows:
(7)(a) "Injury" and "personal injuries" include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or derangement, however caused or contracted.
Despite any implication from the second sentence of this definition of injury, the jurisprudence has recognized that a condition commonly considered as an illness or disease may nevertheless cause such violence to the human system that it may qualify as compensable accidental injury under the Act. Parks v. Insurance Co. of North America, 340 So.2d 276 (La.1976); Geist v. Martin Decker Corp., 313 So.2d 1 (La.App. 1st Cir.1975).
As in all civil cases, the plaintiff in a worker's compensation case must establish causation by a preponderance of the evidence. Boren v. Louisiana Pacific Corp., 486 So.2d 1190 (La.App. 3d Cir.1986), writ denied, 489 So.2d 1277. If the evidence leaves the probabilities evenly balanced, or if it shows only a possibility of a work-related event or leaves it to speculation or conjecture, then the plaintiff fails to carry his burden. Dunckelman v. T. Baker & Sons, 447 So.2d 26 (La.App. 1st Cir.1984). Medical testimony must be weighed in the light of other credible evidence of a non-medical character, such as the sequence of symptoms or events, in order to judicially determine probability. Hamilton, supra.
In addressing the case from the accidental injury perspective, it is important to note that neither the plaintiff's case nor the hearing officer's ruling focused on precisely when the virus entered Mr. Bandy's system. The three treating physicians could only speculate whether Mr. Bandy had a common cold virus, influenza B, a viral infection of the lungs (viral pneumonia) or a viral infection directly affecting the heart (viral myocarditis). Moreover, all of the physicians, inasmuch as they never saw Mr. Bandy during the first three to four weeks of his condition, could not pinpoint when the viral infection, or sequence of such infections, actually entered his system.
Therefore, the emphasis by the plaintiff was on Mr. Bandy's employment-related physical stresses that arguably weakened his immune system. The plaintiff questioned the various physicians using the assumption that viruses are always present, ready to infect all persons when their immune systems become weakened. No questions were presented by either side concerning whether a person's direct exposure to another person infected with a virus could play an equally critical role in the onset of the virus regardless of the condition of one's immune system. No evidence was presented by Mr. Bandy discussing the health of any persons with whom he came in contact either on the job or at home during his 70-hour work week and the Saturday and Sunday thereafter.
The evidence in this case, therefore, did not attempt to prove the type of accidental injury which was recognized in Geist v. Martin Decker Corporation, supra. In that case, the plaintiff claimed that he was infected with the virus which causes hepatitis while attending a company meeting at a specific restaurant. The court found that a cause of action had been pled because both an accident and injury as defined in the Act had been alleged. The alleged accident of contracting the hepatitis at a specific time and place which occurred in the course and scope of employment was significant. Yet, in the present case, the difficulty in pinpointing the initial time and source of Mr. Bandy's viral infection with which he returned to work on Monday morning, or the source of even a second virus which might have infected his weakened system in the three to four weeks thereafter, makes tenuous the claim of an accidental injury from the virus contracted "in the course of" his employment. Dunckelman v. T. Baker Smith & Sons, Inc., supra.
The plaintiff therefore claimed that his exposure to the extreme temperature changes as he moved the trucks for his employer *909 and his fatigue[1] at the end of his work week weakened his immune system and made him susceptible thereafter to the viral infection. The hearing officer interpreted the medical testimony discussed below and held that "the contraction of the virus was related by the medical evidence to his specific work, fatigue and activities."
The three doctors, who primarily testified to the treatment of Mr. Bandy and his symptoms, were also asked to discuss the factors that could have impaired the plaintiff's immune system in January, 1994, one month before he sought medical care. The following testimony of Dr. Soileau, whose testimony was the most thorough of the three, summarized this view:
Q....My question was isn't pneumonia and these viral infections that Mr. Bandy had or other people like him have, isn't it usually caused by a virus that's found in most human beings? It's around?
A. Yeah, they're endemic. Endemic means there's some of them going on all the time. And bad weather, winter-time, cold weather, overexposure seems to bring them out a little bit more.
Q. Well, does it bring them out or does it just lower our resistance to them?
A. Well, if they're susceptible to them then it lowers the resistance. Now, he has another factor that will make him more prone to infection and that's diabetes.
Q. I was going to get to that.
A. This will predispose him to all kinds of illnesses. Particularly if he has something that's as debilitating as a viremia.
* * * * * *
Q. ...Sub freezing temperatures. Do you think that that kind of environment and after a long work day like that, would that decrease his ability to fight off those viruses?
A. I think that other factors have to be looked at. How well was he dressed, did he get wet, did his feet get wet, did his head get wet, was his shirtcoat wet. These things would predispose him to something. Particularly if he was fatigued and if he wasthe fact that he has diabetes. And that particular time his diabetes wasif he wasn't following his diet. I don't know whether he was or not. When I admitted him his blood sugar was elevated.
* * * * * *
Q. So if we take a person with blood pressure that's normally elevated for him who also has diabetes and then we work him driving a truck all day longand I'll ask you to accept somewhere between eight and eleven hours. And I'll also ask you to accept that this is a Friday or Saturday. I believe it was a Friday evening or early morning Saturday after a long work week of over sixty hours. Okay. Now, can we say that it is reasonably possible that the long work hours and the exposure to the extremes and cold would have reduced his ability to combat the opportunistic infection or the viral infection?
A. I would have to say that that's a possibility. That's the only answer I can
Q. It's a reasonable possibility?
A. It's a reasonable possibility.
* * * * * *
Q. And you also stated that having a pre-existing or a symptomatic condition of hypertension and diabetes can also act to lower that immune system. Is that right?
A. (Nods affirmatively.)
Q. Now, I know that it's hard for you to draw lines and to sort these things out but unfortunately that's what we're trying to do because we kind of have to. Of those factors are you able to rank those in terms of importance or what would be the more likely cause of the lowering of his immune *910 system? In other words, when you compare the exposure and the stress and being tired to the symptomatic hypertension and diabetes, which one of those factors are more important in your mind in lowering the immune system?
A. Well, I would class them fatigue number one and intercurrent illness number 2.
Q. And intercurrent illness, you're referring to the hypertension and the diabetes?
A. Yeah. And then the prolonged exposure wouldn'tthat's the way I would rank them. Other people may rank them differently but
Q. Okay. All that youyou think all of these factors are acting together though?
A. Yes.
The following statement from Dr. Futrell acknowledges the debate in the medical community, that was later made into a stipulation[2] by the parties:
A. There is debate in the medical literature whether exposure to cold lowers a patient's resistance and makes that patient more likely to be susceptible to a viral infection. I think there is certainly a likelihood in some patients that that does occur. The problem is saying in a given patient that it did. (Emphasis supplied).
Dr. Futrell also said that it was more likely than not that Mr. Bandy had the genetic makeup to be susceptible to whatever virus he encountered in this case.
Dr. Cooper's testimony on the subject was as follows:
A. Yeah. I think that is theas I said before, there is no way to know whether he would have contracted it whether he had been out in the cold or not. The only thing I'm saying is, we often see people who have been exposed to cold develop respiratory infections.
From my view of this testimony, I cannot conclude that a preponderance of the evidence demonstrated that plaintiff's two-hour exposure to the cold weather was an employment-related accident which significantly injured his immune system allowing for the viral infection. Such exposure, while a possible cause that affected the plaintiff's immune system, was never shown to be the probable or more likely than not cause in view of the plaintiff's other independent health factors, his unexamined genetic makeup, the debate in the medical community, and the uncertainty, as discussed above, concerning the actual timing of the infection of the plaintiffs system by the virus.
The causation weakness in this case concerning the employee's exposure to common factors both in and out of the work place, is similar to the problem faced in Page v. Prestressed Concrete Co., 399 So.2d 657 (La.App. 1st Cir.1981), writ not considered, 401 So.2d 994. There, the plaintiff who smoked four to five packs of cigarettes a week, asserted the inhalation of cement dust aggravated his asthmatic condition resulting in total and permanent disability. Because the medical experts were unable to determine whether cigarettes or inhalation of cement dust was the primary cause of plaintiff's disability, the district court and court of appeal rejected his demands for workers' compensation. The court stated:
We feel it would be unfair to burden the employer, Prestressed, with the compensation of this disease when it is readily admitted by all that the smoking is at least partially responsible for the condition. Certainly if the medical evidence had shown the majority of the disease was *911 caused by the cement dust, and the smoking only aggravated the condition, we could hold differently. But no such testimony was adduced. Id. at 659.
As shown by Dr. Soileau's testimony regarding Mr. Bandy's diabetic condition and Dr. Futrell's speculation regarding the genetic factors affecting differently each person's ability to ward off viruses, the medical testimony in this case by the three physicians, who were not immunologists and who were not prepared to report on scientific studies sorting out these factors, is not convincing regarding the asserted work-related injury to Mr. Bandy's immune system.
In making this dissent, I distinguish this case from Gotte v. Cities Service Oil Co., 298 So.2d 920 (La.App. 3d Cir.1974), writ denied, no error of law, 302 So.2d 37. In Gotte, the parties by their stipulations and assumptions disposed of the question of causation. The court stated:
On the question of causal connexity, defendant, through the stipulation of facts and the single issue to be determined, has admitted that plaintiff's periodic exposure to the extreme range of temperatures during the course of his employment, on or about October 29, 1969, `created a condition which made the employee vulnerable to pneumonia', which he subsequently contracted.
* * * * * *
For we know that as a result of said exposure, physical changes took place and entry of pneumonia germs into the human system soon followed. Surely such an occurrence was unexpected and unforeseen. It is also clear that plaintiff suffered `violence to the physical structure of the body,' without which he would not have contracted pneumonia. In addition the occurrence happened over a very short period of time, rather than over an extended period with gradual appearance of symptoms becoming progressively worse. Id. at 922 and 923.
Unlike Gotte, where one factor affecting the immune system was singled out as the stipulated cause, this record presents multiple factors which the physicians candidly admitted as possible variables in the debate over impairment of the immune system. I find the proof of causation in this case lacking and would reverse.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and WILLIAMS, STEWART, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] The only fact relating to fatigue was the statement of plaintiff's usual work week of 60 to 80 hours. The plaintiff did not specify any of the details of the week in question except for the two-hour exposure, and he estimated that he worked 70 hours. As gathered from the record, though it was unclear, plaintiff returned home each day. Arguably, the gradual and cumulative effect of fatigue from the work place might place this factor for assessment under the occupational disease section of the Act where a short-term fatigue allegation would fall under the enhanced burden of proof of La.R.S. 23:1031.1(D).
[2] The stipulation of the parties apparently arose following a discovery deadline dispute where the defense proposed to depose an infectious disease medical specialist to rebut the testimony of the plaintiff's doctors. Though a rule was scheduled to resolve the dispute, no hearing was apparently had and four days after the scheduled hearing the joint stipulation was filed. The stipulation provided: "It is stipulated by the parties that there is a dispute in the medical community regarding the effect that exposure to extremes of temperature, and exposure to stress and fatigue, has on one's immune system. The plaintiff agrees that there are qualified physicians within recognized medical specialities, who would testify that a person's immune system is not lowered by such exposures, and that such exposures do not make a person more suspectable [sic] to the contraction of a viral infection." Since the stipulation only stipulated a medical community dispute, the hearing officer addressed the dispute as unresolved by the stipulation and sided with the plaintiff, making no mention in the written ruling of her interpretation of this stipulation.