# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-210

CHAD YOKUM

VERSUS

WESTPORT LINEN SERVICES, LLC, ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF ACADIA, NO. 17-03724
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**********

## D. KENT SAVOIE
## JUDGE

**********

Court composed of Billy Howard Ezell, Phyllis M. Keaty, and D. Kent Savoie, Judges.

**AFFIRMED.**

**Travis Ron LeBleu**
**Maricle & Associate**
**#1 Sanctuary Blvd, Suite 202**
**Mandeville, Louisiana 70471**
**(225) 924-9581**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **The Phoenix Insurance Company**
     **Westport Linen Services, LLC**

**William J. Casanova**
**Miller and Associates**
**311 North Parkerson Blvd.**
**Crowley, Louisiana 70526**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Chad Yokum**

**SAVOIE, Judge.**

In this workers' compensation matter, Plaintiff Chad Yokum appeals the judgment of the trial court, granting the Motion for Summary Judgment filed by Defendants Westport Linen Services, LLC (Westport) and The Phoenix Insurance Company and dismissing his claims with prejudice. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Westport is an industrial laundry company specializing in the cleaning of hospital linens. Mr. Yokum began his employment with Westport on August 29, 2016. He hit his head on the opening for the washer door twice on August 31, 2016. Mr. Yokum sought medical treatment at Acadia General Hospital (AGH) on September 3, 2016, for this injury. A CT scan showed a lesion on the left posterior parietal lobe. Mr. Yokum was transferred by ambulance to Lafayette General Medical Center (LGMC). There, Dr. Jason Cormier, a neurosurgeon, performed a craniotomy for resection of the lesion and biopsy on September 5, 2016. The pathology report indicated the presence of the bacteria, streptococcus intermedius. Mr. Yokum was discharged from LGMC on September 13, 2016.

On September 27, 2016, Mr. Yokum again presented to AGH because he was suffering from severe headaches. A CT scan was performed which showed a mass in the left parietal lobe with edema. The mass was believed to be a residual brain abscess or resection cavity from the previous craniotomy. Mr. Yokum was discharged and given a prescription for antibiotics.

Mr. Yokum presented to AGH again on October 3, 2016, suffering from headaches and dizziness. On October 4, 2016, Mr. Yokum underwent another CT scan which found a lesion in the left parietal lobe. He was transferred to Our Lady

of the Lake Regional Medical Center in Baton Rouge, Louisiana. There, on October 7, 2016, a second craniotomy was performed on Mr. Yokum, this time it was performed by Dr. Gregory Fautheree. On October 8, 2016, Mr. Yokum suffered a stroke, resulting in permanent impairment. Our Lady of the Lake diagnosed Mr. Yokum with a previously unknown congenital heart disease known as patent foramen ovale (PFO).

On June 3, 2017, Mr. Yokum filed a Disputed Claim for Compensation in workers' compensation court, seeking benefits for his brain injury. Defendants filed a Motion for Summary Judgment on the grounds that Mr. Yokum produced no evidence of medical causation. The hearing was held on October 16, 2019. The trial court granted the motion and dismissed Mr. Yokum's case. Mr. Yokum now appeals.

## ASSIGNMENTS OF ERROR

1. The [Workers' Compensation Judge] erred in granting Westport's *Motion for Summary Judgment* without adequately assessing all potential causes and contributing factors of injury alleged by Chad Yokum.

2. The [Workers' Compensation Judge] erred is [sic] failing to conclude that there was no genuine issue of material fact that causation could be satisfied through (i) excessive exposure to heat; (ii) complications of work accident-related medical treatment, and/or (iii) an aggravation of his preexisting conditions.

## LAW AND DISCUSSION

In *Lenox v. Central Louisiana Spokes, LLC*, 18-556, pp. 3-4 (La.App. 3 Cir. 2/13/19), 265 So.3d 834, 837-38, this court explained:

> Summary judgment procedure is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). This court reviews a trial court's decision on a motion for summary judgment applying a de novo standard of review.

2

*Jackson v. City of New Orleans*, 12-2742, 12-2743 (La. 1/28/14), 144 So.3d 876, *cert. denied*, [574] U.S. [869], 135 S.Ct. 197, 190 L.Ed.2d 130 (2014).

The burden of proof is on the mover unless the mover will not bear the burden of proof at trial, in which case the mover is not required to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. La.Code Civ.P. art. 966(D)(1). "The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.*

"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

> A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate.

*Jackson*, 144 So.3d at 882.

This court further explained:

> The workers' compensation laws provide coverage to an employee for personal injury received by accident arising out of and in the course of employment. LSA-R.S. 23:1031(A). An employee must prove the chain of causation required by the workers' compensation statutory scheme. He must establish that the accident was work-related, that the accident caused the injury, and that the injury caused the disability. *See DeGruy v. Pala, Inc.*, 525 So.2d 1124, 1130 (La.App. 1st Cir.), *writ denied*, 530 So.2d 568 (La.1988). Initially, a workers' compensation claimant has the burden of establishing by a preponderance of the evidence that an accident occurred on the job and that he sustained an injury. *Holiday v. Borden Chem.*, 508 So.2d 1381, 1383 (La.1987). Next, he must establish a causal connection between the accident and the resulting disability by a preponderance of the evidence. *West v. Bayou Vista Manor, Inc.*, 371 So.2d 1146, 1147 (La.1979).

*Id.* at 838.

The Workers' Compensation Judge (WCJ) in this matter issued an oral ruling on October 16, 2019. The WCJ relied on the medical opinions of Mr. Yokum's treating physicians, Dr. Cormier and Dr. Fautheree, as well as relying heavily on Defendants' expert in the field of infectious diseases, Dr. Brobson Lutz. The WCJ stated:

> The Court has reviewed the evidence. Dr. Cormier is of the opinion that the head trauma was unrelated to the brain abscess. A 12/15/16 report from Dr. Gregory Fautheree states there's no obvious cause for the brain abscess.
>
> The Court has reviewed the deposition of Dr. Brobson Lutz. Page 11 of the deposition states:
>
> > []QUESTION: All Right. So you reviewed those records, and what did you determine, Doctor:
> >
> > []ANSWER: I came to several major opinions that I've listed on Page 4 of my report. I guess the most central was that Mr. Yokum's brain abscess developed before his first day at work at the laundry, and his alleged bumps on the head did not cause or aggravate his brain abscess but actually sort of led to the diagnosis. The brain abscess was causing some problems that I suspect caused him to bump his head, including vision changes that I list in number three. And his vision changes caused by the abscess led to this trauma and not vice versa.[]
> >
> > []QUESTION: Okay. Let's go back to your first opinion. You said his brain abscess developed before his first day of work at the laundry room. What did you based that upon?
> >
> > []ANSWER: Well, If I'm going to refer to my report, I thought the best way to approach this was to ask a series of questions. And it - - I guess the major reason was the surgical finding and imaging findings.
> >
> > []His MRI on September 3, 2016[,] revealed a rim around the abscess that - - stages that abscess as being as least 14 days old. And then also the neurosurgeon on September 5th, which I believe was - - which was just a few days after he was hired on August 29th, so he was hired on August 29th, the surgery was on September 5th, he described this gritty exudative-like material.

[]And again, this is - - this is a substance that takes time to form and it's consistent with an abscess that has been present at least 14 days. The initial stage of the abscess would include soft tissue brain changes, then gradually the rim would develop, and then the body would begin liquefying the matter within that rim ending up with this grit-like material. You don't find this kind of surgical finding or imaging in an abscess less than 14 days old.[]

Further down, page 13 of the deposition:

[]QUESTION: Okay, so the 14 days would have been started before he was hired on August 29, 2016, correct?

[]ANSWER: Right.[]

Page 41 of the deposition, beginning at line 16:

[]QUESTION: Doctor, just so we're clear, you think - - from what you're saying, that it is unlikely that heat exposure, increased exposure to heat can have a detrimental effect on the central nervous system?

[]ANSWER: No. I never said that.

[]QUESTION: Or I guess a brain abscess? Let me rephrase that.

[]ANSWER: I'm saying that exposure to heat could lead to an earlier diagnosis of a brain abscess, but it would not result in - -

[]QUESTION: Would it - -

[]ANSWER: - - any, but there would be no causation role, or it would not - -it would not worsen the abscess.

[]QUESTION: Did it accelerate the maturation process or anything like that?

[]ANSWER: I know of no evidence to support that.[]

Further down in the deposition, page 42, line 20:

[]QUESTION: Okay. And to further that, more probably than not, were the trauma that - - well, not trauma but when he hit his head, bumped his head at work and his work conditions, more probably than not, were not the cause or aggravation of his brain abscess, correct?

5

[]ANSWER: Correct.

[]QUESTION: Okay.

[]ANSWER: He bumped his head at work because he had a brain abscess. And that was not part of the - - of his initial presentation. It did not cause the abscess. It did not make the abscess worse.[]

Considering the law and the evidence, the court finds that there are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law. Accordingly, the motion for summary judgment is granted, and the 1008 is dismissed with prejudice.

In addition to his deposition testimony, Dr. Lutz issued a March 27, 2018 report after reviewing Mr. Yokum's medical records. Dr. Lutz concluded the report with the following five opinions:

I.   Mr. Yokum's brain abscess developed before his first day of work at the laundry.

II.  His alleged one to multiple bumps to his head did not cause or aggravate his brain abscess but rather led to its diagnosis.

III. The brain abscess caused some vision changes that likely led to his recurrent forehead trauma, not vice versa.

IV.  Mr. Yokum had at least three potential risk factors that increased his chances of developing a brain abscess. None of these were related to his employment.

V.   Mr. Yokum did not take prescribed medications as directed after discharge from Lafayette General. This incomplete therapy led to a reactivation of his brain abscess along with several serious complications that would not have occurred if he had taken medication as prescribed.

Mr. Yokum complains that the trial court failed to consider other possible causes for his injury, such as: (i) excessive exposure to heat; (ii) complications of work accident-related medical treatment; and/or (iii) an aggravation of his preexisting conditions. However, the record is devoid of any evidence to support Mr. Yokum's contentions.

6

Regarding his excessive exposure to heat, there is an article entitled *Management of Heatstroke and Heat Exhaustion* in the record. While it describes the signs and symptoms of heatstroke, there is no evidence in the record that Mr. Yokum suffered from a heat-related illness. While there is evidence that Mr. Yokum complained that it was too hot to work, there is no evidence as to the actual temperature inside Westport or length of time that Mr. Yokum was exposed to excessive temperatures. His medical records were introduced as evidence, and there is no diagnosis of heatstroke or heat exhaustion. Further, Mr. Yokum did not secure a medical expert to support his conclusion that he suffered from a heat-related illness.

Mr. Yokum next complains that he received substandard medical treatment, including inappropriate medication management, charting omissions, and other unexplained inconsistencies in the medical records. These complaints stem from treatment received at AGH and LGMH. Mr. Yokum argues that "[a]n employer is liable for worker's compensation when the initial injury is aggravated by medical complications or a subsequent injury, whether due to improper medical treatment or otherwise, if the complications are caused by the work-related injury." *Bandy v. International Paper Co.*, 29,085, p. 5 (La.App. 2 Cir. 2/26/97), 690 So.2d 902, 906, *writ denied*, 97-1101 (La. 6/20/97), 695 So.2d 1354. Mr. Yokum did not present any evidence, medical or not, that the alleged complications were caused by the work-related injury.

Finally, Mr. Yokum argues that his workplace injury aggravated a pre-existing condition. Dr. Lutz concluded that the bumps to Mr. Yokum's "head did not cause or aggravate his brain abscess but rather led to its diagnosis." Mr. Yokum did not present any evidence to the contrary. In addition, there is a

complete lack of evidence as to whether Mr. Yokum suffered a heat-related illness, much less whether it aggravated a pre-existing condition.

Louisiana Code of Civil Procedure Article 966(D)(1) states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

In *Sweat v. Sams Air Conditioning Maintenance Service*, 15-1100 (La.App. 3 Cir. 4/6/16), 188 So.3d 482, Mr. Sweat twisted his back when he was installing ductwork. He went to the doctor for the pain and discovered that he had an epidural abscess. Mr. Sweat underwent surgery to have the abscess removed. Due to the damage the infection had caused, Mr. Sweat was rendered a paraplegic. Mr. Sweat filed a disputed claim for compensation, alleging the abscess was caused by a workplace injury. His employer filed a motion for summary judgment. At the hearing on the motion, Mr. Sweat did not introduce any evidence in opposition to the motion. The only piece of evidence admitted was the deposition of Dr. Lawrence Drerup. This court stated:

> In the lone piece of evidence we may consider, Dr. Drerup clearly states, several times, in several ways, that the infection that caused Mr. Sweat's abscess was not caused by trauma, injury, or strain. The abscess was caused by bacterial infection alone. The source of the multiple bacteria causing the abscess, according to Dr. Drerup, is unknown and may never be known, as there is no way for medical science to determine its origin in this case. Thus, Sams introduced clear, uncontradicted evidence that causation of the abscess could not be proven by Mr. Sweat.
>
> Mr. Sweat had over a year between the time of the alleged workplace accident and the hearing on the motion for summary

judgment to depose infectious specialists or other doctors, but failed to do so. Truly, he failed to produce any factual support of any kind to establish that he would be able to satisfy his evidentiary burden of proof at trial.

*Id.* at 483-84.

The same is true in the present case. Mr. Yokum had over three years from the date of the accident to the hearing on the motion for summary judgment to obtain a medical expert to establish that he could satisfy his burden at trial. He failed to do so. He did not present any evidence to contradict the findings of Defendants' expert Dr. Lutz, or his treating physicians Dr. Cormier and Dr. Fautheree. As such, we find there are no genuine issues of material fact in this matter, and the WCJ was correct in granting Defendants' motion for summary judgment.

## DECREE

The judgment of the trial court is affirmed. All costs associated with these proceedings are hereby assessed to Chad Yokum.

**AFFIRMED.**